**2014-1143**

# In The
# United States Court Of Appeals
# For The Federal Circuit

## Z PRODUX, INC.,

*Plaintiff - Appellant,*

v.

## MAKE-UP ART COSMETICS, INC.,

*Defendant - Appellee.*

Appeal from the United States District Court for the
Central District of California

---

## BRIEF OF APPELLANT

---

**Robert D. Katz**
**KATZ PLLC**
**6060 North Central Expressway**
**Suite 560**
**Dallas, TX  75206**
**(214) 865-8000**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

## <u>CERTIFICATE OF INTEREST</u>

Pursuant to Federal Circuit Rule 47.4, the undersigned counsel for Appellant hereby certifies that:

1.  The full names of every party or amicus represented by me is:

Z Produx, Inc.

2.  The names of the real parties in interest  represented by me is:

Z Produx, Inc.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None.

4.  The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the trial court or are expected to appear in this court are as follows, representing the Plaintiff-Appellant, Z Produx, Inc.:

Katz PLLC, Robert D. Katz

Kiesel Law LLP, Paul R. Kiesel, Jeffrey A. Koncius


Respectfully Submitted,

KATZ PLLC

Dated:  February 3, 2014          By: /s/ Robert D. Katz_____
                                                   Robert D. Katz

i

# **TABLE OF CONTENTS**

**PAGE:**

CERTIFICATE OF INTEREST .................................................................. i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES .................................................................... v

STATEMENT OF RELATED CASES ................................................... viii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES .............................................................. 1

STATEMENT OF THE CASE ................................................................. 1

STATEMENT OF RELEVANT FACTS .................................................. 2

SUMMARY OF THE ARGUMENT ....................................................... 4

     A.    The District Court Erred By Incorrectly Construing The Claim Of The '743 Patent, In Part By "Factoring Out" Design Elements ............................................................................. 4

     B.    The District Court's Infringement Analysis Failed To Apply The "Ordinary Observer" Test To The Overall Visual Impression Of The Patented Design And Impermissibly Compared An Embodiment Of The Patented Design With The Accused Device ......................................................................... 5

ARGUMENT ........................................................................................... 6

     I.    The District Court Erred By Incorrectly Construing The Claim Of The '743 Patent, In Part by "Factoring Out" Design Elements ............................................................................. 6

          A.    Standard of Review ................................................................. 6

B.    Applicable Law ..........................................................................6

    1.    Claim Construction ..........................................................6

    2.    Functionality ...................................................................8

C.    The District Court Erred By Inappropriately "Factoring Out" Design Aspects Of Z Produx's Patent...............................9

D.    The District Court Erred by Construing The Design Using A Detailed Verbal Description Of The Claimed Design ..................................................................................16

E.    The District Court Erred By Inferring A Proposed Claim Construction On Behalf Of MAC ...........................................18

F.    The District Court Erred By Weighing The Evidence.............19

II.    The District Court's Infringement Analysis Failed To Apply The "Ordinary Observer" Test To The Overall Visual Impression Of The Patented Design And Impermissibly Compared An Embodiment Of The Patented Design With The Accused Device ..................................................................................21

A.    Standard of Review.................................................................21

B.    Applicable Law.......................................................................22

    1.    Ordinary Observer Test ..................................................22

    2.    Comparison With Z Produx's Commercial Embodiment.................................................................24

C.    The District Court Erred By Failing to Apply the Ordinary Observer Test..........................................................25

D.    The District Court Erred By Finding That Z Produx Accused Infringement of Only Two Elements Of Its Patented Design........................................................................27

E.    The District Court Erred By Making A Comparison Between The Accused Device And The Commercial Embodiment Of Z Product's Underlying Article Of Manufacture ............................................................29

　　1.    Comparison With Dimensions Of The Patent's Figures ........................................................29

　　2.    Dimensional Comparison With Z Palette.......................30

F.    The District Court Erred By Ignoring Its Own Claim Construction When Performing Its Infringement Analysis......33

CONCLUSION .................................................................35

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES:

*180s, Inc. v. Gordini U.S.A., Inc.*,
    699 F. Supp. 2d 714 (D. Md. 2010)............................................................. 7-8

*3M Innovative Properties Co. v. Tredegar Corp.*,
    725 F.3d 1315 (Fed. Cir. 2013) ........................................................6

*Amini Innovation Corp. v. Anthony California, Inc.*,
    439 F.3d 1365 (Fed. Cir. 2006) .............................................24, 26

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988) .....................................................16

*Berry Sterling Corp. v. Pescor Plastics, Inc.*,
    122 F.3d 1452 (Fed. Cir. 1997) .....................................12, 30, 31

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989)......................................................................15

*Braun, Inc. v. Dynamics Corp. of Am.*,
    975 F.2d 815 (Fed. Cir. 1992) ......................................................23

*Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*,
    420 F.3d 1364 (Fed. Cir. 2005) ...................................................21

*Contessa Food Prods., Inc. v. Conagra*,
    282 F.3d 1377 (Fed. Cir. 2002) .....................................................7

*Crocs, Inc. v. Int'l Trade Comm'n*,
    598 F.3d 1294 (Fed. Cir. 2010) ...........................................*passim*

*Dobson v. Dornan*,
    118 U.S. 10 (1886)..........................................................................7

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ............................................................*passim*

*Engine Mfrs. Ass'n v. S. Coast Air Quality Maint. Dist.*,
    498 F.3d 1031 (9th Cir. 2007) ....................................................................22

*Gorham Co. v. White*,
    81 U.S. 511 (1871)...............................................................................22, 27

*Hupp v. Siroflex of Am.*,
    122 F.3d 1456 (Fed. Cir. 1997) ..................................................................12

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009) ..................................................................22

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) ............................................................*passim*

*Litton Sys., Inc. v. Whirlpool*,
    728 F.2d 1423 (Fed. Cir. 1984) ..................................................................23

*OddzOn Prods. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) ....................................................11, 12, 32

*PHG Techs., LLC v. St. John Cos.*,
    469 F.3d 1361 (Fed. Cir. 2006) .......................................................9, 10, 20

*PHG Techs., LLC v. St. John Cos.*,
    529 F. Supp. 2d 852 (M.D. Tenn. 2007) ...............................................30, 31

*Payless Shoesource, Inc. v. Reebok Intern. Ltd.*,
    998 F.2d 985 (Fed. Cir. 1993) ....................................................................23

*Richardson v. Stanley Works, Inc.*,
    610 F. Supp. 2d 1046 (D. Az. 2009) ...............................................13, 14, 16

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010) ............................................................*passim*

*Rosco, Inc. v. Mirror Lite Co.*,
    304 F.3d 1373 (Fed. Cir. 2002) ...................................................................12

*Sun Hill Industries, Inc. v. Easter Unlimited, Inc.*,
    48 F.3d 1193 (Fed. Cir. 1995) ......................................................... 24-25, 31

*TecSec, Inc. v. International Business Machines Corp.*,
    No. 12-1415 (Fed. Cir. 2013) ........................................................................6

## **STATUTES:**

28 U.S.C. § 1295(a)(1) ...................................................................................1

28 U.S.C. § 1331 .............................................................................................1

28 U.S.C. § 1338(a) ........................................................................................1

35 U.S.C. § 102(b) ..........................................................................................1

35 U.S.C. § 171 .............................................................................................22

35 U.S.C. § 271 *et seq.* ..................................................................................1

35 U.S.C. § 271(a) ..........................................................................................3

## <u>STATEMENT OF RELATED CASES</u>

(a)    No other appeal in or from the same civil action was previously filed before this or any other appellate court.

(b)    The title and number of any case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal are:

1.    *Z Produx, Inc. v. Make-Up Art Cosmetics, Inc.*, 2:13-cv-00734-DDP-RP (C.D. Cal., 2013).

2.    *Z Produx, Inc. v. Ofra Cosmetics, LLC.*, 12-cv-05040-DDP-RZx (C.D. Cal., 2012).

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and 35 U.S.C. § 271 *et. seq.*  The District Court entered a final judgment dismissing the case on November 8, 2013.  This timely appeal to the Federal Circuit was filed on November 15, 2013.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1.    Did the District Court err in its claim construction of United States Patent No. D642,743?

2.    Did the District Court err in granting summary judgment of no infringement of U.S. Patent No. D642,743 ?

## STATEMENT OF THE CASE

Appellant, Z Produx, Inc. ("Z Produx") appeals the claim construction and summary judgment decisions of the United States District Court for the Central District of California ("District Court") regarding United States Patent No. D642,743  ("the '743 Patent").  (A20-26).  On February 1, 2013, Z Produx filed suit against Make-Up Art Cosmetics, Inc. ("MAC") in the District Court for patent infringement of the '743 Patent.  (A35-52).  On September 23, 2013, MAC filed a motion for summary judgment of invalidity, pursuant to 35 U.S.C. § 102(b), and non-infringement of the '743 Patent.  (A77-106).  On September 30, 2013, Z Produx filed its opposition in response to MAC's motion for summary judgment of

invalidity and non-infringement of the '743 Patent. (A697-719). On October 7, 2013, MAC filed a reply in support of its motion for summary judgment of invalidity and non-infringement of the '743 Patent. (A865-889). On October 18, 2013, Z Produx filed a surreply in opposition to MAC's motion for summary judgment of invalidity and non-infringement of the '743 Patent. (A933-944).

On October 21, 2013, the District Court held a hearing regarding MAC's motion for summary judgment of invalidity and non-infringement of the '743 Patent. (A945).

On November 5, 2013, United States District Judge, Dean D. Pregerson ("District Judge Pregerson") entered an Order granting MAC's motion for summary judgment of non-infringement of the '743 Patent. (A3-19). District Judge Pregerson also entered judgment on November 8, 2013 and dismissed Z Produx's infringement claim with prejudice. (A1-2).

On November 15, 2013, Z Produx filed a Notice of Appeal to the Federal Circuit of District Judge Pregerson's Order granting summary judgment of non-infringement of the '743 Patent. (A954-955).

## STATEMENT OF RELEVANT FACTS

Z Produx, Inc. ("Z Produx") and MAC are competitors in the arena of cosmetics accessories. (A3). This case centers on MAC's infringement of a design patent held by Z Produx for a makeup palette. (A3, A35-A39). Z Produx is

2

the owner of the entire rights, title and interest to U.S. Patent No. D642,743 ("the '743 patent"), a design patent for a cosmetics holder. (A37). The patent includes a single claim for "[t]he ornamental design for the cosmetic holder, as shown and described." The patent includes 14 figures depicting Z Produx's cosmetics holder design from various perspectives. (A20-26).

Zena Shteysel is the inventor of the '743 patent and the president of Z Produx. (A4). Z Produx markets the "Z Palette," a cosmetics palette that resembles the '743 design patent and includes the text "Pat. D642,743" on the bottom of the device. (A37). Z Produx's Z Palette product line was conceived and designed by Ms. Shteysel, a make-up artist who has worked extensively in Hollywood with celebrities in connection with film and television. (A36). MAC markets, among other products, a cosmetic palette called the MAC Pro Palette Large/Single ("MAC Palette"). (A38). Z Produx alleged in its complaint that MAC's sale of the MAC Palette infringes its '743 design patent in violation of 35 U.S.C. § 271(a). *Id*. Figure 1 of the '743 patent and the accused device are shown below.



FIG. 1

## SUMMARY OF THE ARGUMENT

**A.    The District Court Erred By Incorrectly Construing The Claim Of The '743 Patent, In Part By "Factoring Out" Design Elements.**

The District Court adopted the following construction of the '743 patent design:

> The '743 claims the ornamental features of a cosmetic holder design that includes a "lip" extending past the edge of the cosmetic holder, with a flat or flushed spine or hinge along the back of the case, and with the overall proportions depicted in its drawings.

(A14-15).

In doing so, the District Court:

1. Inappropriately "factored out" design aspects of Z Produx's patent;
2. Construed the design using an unnecessarily detailed verbal description;
3. Impermissibly inferred a proposed claim construction on behalf of MAC;
4. Weighed evidence relating to alleged functionality; and
5. Distorted the infringement analysis by preventing consideration of the design as a whole by the ordinary observer.

4

More generally, the District Court impermissibly focused on particular features of the design patent-in-suit.  Instead, the ordinary observer test must be applied based upon the overall visual impression of the claimed design.  Therefore, the District Court's claim construction must be reversed because it focused on particular features of the patented design instead of the overall visual impression -- exactly what the Federal Circuit has cautioned against.

**B.     The District Court's Infringement Analysis Failed To Apply The "Ordinary Observer" Test To The Overall Visual Impression Of The Patented Design And Impermissibly Compared An Embodiment Of The Patented Design With The Accused Device.**

The District Court made the following mistakes during its infringement analysis:

1. Failed to apply the "ordinary observer" test;
2. Formed the mistaken belief that Z Produx had accused infringement of only two elements of its patented design;
3. Compared the accused device with the commercial embodiment of Z Produx's underlying article of manufacture;
4. Limited the scope of the patented design to certain proportional aspects; and
5. Considered design aspects outside of its claim construction.

The District Court began its infringement analysis using a flawed claim construction consisting of three elements.  The District Court also failed to apply the "ordinary observer" test and instead focused its analysis on four individual aspects of the design.

## ARGUMENT

**I.    The District Court Erred By Incorrectly Construing The Claim Of The '743 Patent, In Part by "Factoring Out" Design Elements**

### A.    Standard of Review

This Court's standard of review of a district court's judgment on claim construction of patent claims is *de novo*.  *TecSec, Inc. v. International Business Machines Corp.*, No. 12-1415 (Fed. Cir. 2013).  Claim construction is a question of law that is reviewed without deference.  *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013).

### B.    Applicable Law

#### 1.    Claim Construction

*Egyptian Goddess* set forth new rules for both claim construction and infringement analysis in design patent cases. With respect to claim construction, the Federal Circuit noted that, although trial courts have had a duty to conduct claim construction in design patent cases, no particular form has been prescribed. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc).  Thus, although trial courts in such cases have generally issued detailed verbal descriptions of the claimed designs, the Federal Circuit has never required such constructions.  *Id*.

As an initial matter, the Federal Circuit has noted that a trial court is not to approach a design patent claim construction in the same manner as a utility patent

6

claim construction. See *Egyptian Goddess*, 543 F.3d at 680 ("[A]s a general matter, [trial] courts should not treat the process of claim construction as requiring a detailed verbal description of the claimed design, as would typically be true in the case of utility patents."). While a utility patent is analyzed claim term by claim term, a design patent is analyzed based on the design as a whole. See *id*.

Indeed, the Federal Circuit has approved of a district court's construction of the asserted design patent claim as meaning "a tray of a certain design . . . as shown in Figures 1-3," and has reversed an infringement determination based on a written claim construction that impermissibly focused on particular features of the design patent-in-suit. *Contessa Food Prods., Inc. v. Conagra*, 282 F.3d 1377, 1377 (Fed. Cir. 2002), abrogated on other grounds by *Egyptian Goddess*, 543 F.3d 665; *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010) (finding that the "Commission placed undue emphasis on particular details of its written description of the patented design" and that "the concentration on small differences in isolation distracted from the overall impression of the claimed ornamental features").

There are sound reasons for this approach. For one, "a design is better represented by an illustration than it could be by any description." *Egyptian Goddess*, 543 F.3d at 679 (citing *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)) (internal quotation marks omitted); see also *180s, Inc. v. Gordini U.S.A., Inc.*, 699

7

F. Supp. 2d 714, 728-29 (D. Md. 2010) (declining to issue a detailed verbal description construing design patent claims because the "illustrative figures speak for themselves").

This Court has cautioned, and continues to caution, trial courts about excessive reliance on a detailed verbal description in a design infringement case. *See, e.g., Egyptian Goddess*, 543 F.3d at 679. In *Egyptian Goddess*, this Court warned that misplaced reliance on a detailed verbal description of the claimed design risks undue emphasis on particular features of the design rather than examination of the design as a whole. *Id.* at 679-80. In many cases, the considerable effort in fashioning a detailed verbal description does not contribute enough to the infringement analysis to justify the endeavor. *See id.* at 680. Depictions of the claimed design in words can easily distract from the proper infringement analysis of the ornamental patterns and drawings." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010).

2.     Functionality

"A design patent is directed to the appearance of an article of manufacture. An article of manufacture necessarily serves a utilitarian purpose, and the design of a useful article is deemed to be functional when the appearance of the claimed design is 'dictated by' the use or purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

Functional design elements can be claimed when they serve a primarily ornamental purpose, e.g., in circumstances where there are several ways to achieve the underlying function. *L.A. Gear*, 988 F.2d at 1123. Resolving "[w]hether a patented design is a functional or ornamental is a question of fact." *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006).

C.    The District Court Erred By Inappropriately "Factoring Out" Design Aspects of Z Produx's Patent.

The District Court improperly "factored out" design aspects from the patented design. The ornamental aspects of the claimed cosmetics palette reveal a minimalist design that is rectangular when viewed from the top, is relatively shallow in comparison to its length and width, has generally clean lines, a clean flat top, and contains a clear window on the top lid. Figure 1 of the '743 patent embodies the overall appearance of the claimed design.



FIG.1

9

Instead of adopting a claim construction that simply referenced the illustration of the patent, the District Court attempted to provide a detailed description of the claimed design. But prior to doing so, the District Court determined that certain design aspects were functional and "factored" them out. The District Court limited the claim of the above design to the following three aspects: (1) a "lip" extending past the edge of the cosmetic holder; (2) with a flat or flushed spine or hinge along the back of the case; and (3) with the overall proportions depicted in its drawings. (A14-15).

The District Court disregarded the design aspects of the clear window and empty base, finding that they were functional rather than ornamental. The District Court erred in factoring out the clear window in its entirety because the size, shape, and design of a window can vary substantially, and still perform a purported function. While a window may serve a function, like any component that may exhibit a function, it need not be excluded simply because the component performs a function.[1] "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *L.A. Gear*, 988 F.2d at 1123. The District Court seemingly equated its perceived functionality of the existence of the window with the

---

[1] Z Produx does not concede that the window is functional, but instead addresses this issue in the subsequent section. See *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (2006) ("Whether a patented design is functional or ornamental is a question of fact").

functionality of the shape of the window. There was no evidence introduced that the rectangular shape of the window pictured in the patent and used in the accused device was configured in a necessary or optimal shape.

Similarly, the District Court determined that the empty base used in Z Produx's design was functional, instead of crediting Z Produx's design decision to avoid the use of base dividers, and thereby contribute to the clean, minimalist aesthetic design of the palette.

In the present case, the article of manufacture is a cosmetics palette. It serves the function of holding cosmetics. The District Court attempted to draw a comparison between the cosmetics palette at issue in this case and rocket-shaped tossing balls in *OddzOn Prods. v. Just Toys, Inc.*, a decision preceding *Egyptian Goddess*. A10-11 citing *OddzOn Prods. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997). Such comparisons are misplaced. The rocket-shape and the fins at issue in *OddzOn* were the reason that the toys worked. The shape was optimized to be aerodynamic and the fins added aerodynamic stability to allow children to throw the toys a greater distance. The *OddzOn* court determined that the function of the design was to travel like a thrown football, but to travel *further* than a normal football owing to the greater stability provided by the fins and the tail. The court determined that because the fins and the tail were required to perform the identified function, then the general design similarity of a football with fins and a

tail could not provide the basis for infringement.  The *OddzOn* court "factored out" the fins and tail because it was <u>dictated</u> by function.

Z Produx's patented design is not dictated by functionality.  Indeed MAC had plenty of options when it came to alternative designs.  Owing to the vast array of alternative designs available, it should be clear that none of the "factored out" design elements were actually functional under the Federal Circuit's "dictated by function" standard.  The following alternative designs make this point clearly:



(A726-732, A842-845, A862).

"Consideration of alternative designs, if present, is a useful tool that may allow a court to conclude that a challenged design is not invalid for functionality." *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997). "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002).

"[T]he fact that [an] article of manufacture serves a function is a prerequisite of design patentability, not a defeat thereof." *Hupp v. Siroflex of Am.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997). A design is only functional and invalid "when the

appearance of the claimed design is `dictated by' the use or purpose of the article." *L.A. Gear*, 988 F.2d at 1123. "If the particular design is essential to the use of the article, it cannot be the subject of a design patent." *Id*. However, "[w]hen there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Id*. Finally, "the utility of each of the various elements that compromise the design is not the relevant inquiry… The elements of the design may indeed serve a purpose, but it is the ornamental aspect that is the basis of the design patent." *Id*.

Here, the article of manufacture is a cosmetics palette. It serves the function of holding cosmetics. (A842-845, A862). Several other cosmetic palette designs achieve the same function. (A726-732, A842-845, A862). The '743 patent's ornamental design is not essential to the function served as a cosmetics palette. *Id*.

The District Court further erred by wholly eliminating design aspects from the claimed design, ultimately leaving few, if any components. (A9). As part of its reasoning, the District Court cited *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010). However, *Richardson* merely affirmed a district court decision that "factored out" functional <u>configurations</u>. See *Richardson v. Stanley Works, Inc.*, 610 F. Supp. 2d 1046, 1050 (D. Az. 2009).

The *Richardson* design patent depicted a "demolition tool" that compromised a handle, hammer-head, jaw, and crowbar. See U.S. Patent. No.

D562, 101. The district court found "[t]he overall <u>configuration</u> of these four elements is dictated by the functional purpose of the tool and therefore is not protected by [Richardson's] design patent." 610 F. Supp. 2d 1046, 1050 (D. Az. 2009) (emphasis added). The court did not, however, eliminate from the patent the handle, hammer-head, jaw, or crowbar. On the contrary, the court held the patent included ornamental qualities including "the standard shape of the hammer-head, the diamond shaped flare of the crow-bar and the top of the jaw, the rounded neck, the orientation of the crowbar relative to the head of the tool, and the plain, undecorated handle." *Id*. The court also recognized that, although the teeth of the jaw were functional, "the particular number and size of teeth can be altered without adversely affecting that function and thus Richardson's choice in those respects can reasonably be said to be dictated by ornamental considerations." *Id*. at 1050-51. On appeal, the Federal Circuit affirmed this construction, likewise observing function dictated the configuration of the tool. 597 F.3d at 1294 (observing the relative locations of the jaw, hammer-head, crowbar, and handle were dictated by function). Like the district court, the Federal Circuit did not completely eliminate those components from the claimed design and leave an empty figure. Indeed, both courts engaged in infringement analyses after performing their constructions and neither found the patent invalid. See 597 F.3d at 1294-96; 610 F. Supp. 2d at 1051-52.

14

Contrary to the District Court's reading of *Richardson*, nothing compels the Court to wholly "factor out" any element that serves a functional purpose. "An article of manufacture necessarily serves a utilitarian purpose." *L.A. Gear*, 988 F.2d at 1123.  The utility of individual elements is irrelevant to the question of functionality, as it is the design in its entirety that provides the basis for the patent. *Id*. "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Id*. While the identified components may have functions, they need not be excluded simply because they perform functions, e.g., the window need not be excluded because it fulfills a visibility function, and the same rationale applies to the other elements.   Of course, where the overall design and configuration is dictated by the function, those aspects are not the subject of the patent. See, e.g., *Richardson*, 597 F.3d at 1294; see also *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148 (1989) (holding a patentable "design must present an aesthetically pleasing appearance that is not dictated by function alone"). Here, however, there is no evidence that the claimed configuration is the only configuration for a cosmetics palette. The relative locations of the elements are not necessarily dictated by the function of the article.

As stated by the District Court, a design is deemed to be functional "when the appearance of the claimed design is dictated by the use or purpose of the

article." *L.A. Gear*, 988 F.2d at 1117. More importantly, "a distinction exists between the functionality of an article or features thereof and the functionality of the particular design of such article or features thereof that perform a function." *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557 (Fed. Cir. 1988).

Here, the District Court failed to distinguish between a lid containing a window of a particular shape and a lid that was completely transparent, or embodied some other shape. The function of the window was not dictated by the design that was claimed for the window, which was a rectangular window shape. Instead, the entire lid aspect of the claimed design was "factored out" and not included in the District Court's claim construction.

D.    The District Court Erred By Construing The Design Using A Detailed Verbal Description Of The Claimed Design.

The District Court went out of its way to provide a detailed verbal description of the claimed design. In doing so, the District Court argued that *Egyptian Goddess* does not hold that the District Court must refrain from any verbal description of the elements. (A14). The District Court went a step further and suggested that it *should* construe design claim by describing the features shown the drawings. *Id.* citing *Richardson*. However, this Court in *Richardson* had the following to say about the use of words as opposed to figures in claim constructions: "[w]e have recently stated that design patents are typically claimed according to their drawings, and claim construction must be adapted to a pictorial

setting. *Richardson*, 597 F.3d at 1294. Depictions of the claimed design in words can easily distract from the proper infringement analysis of the ornamental patterns and drawings." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010).

The District Court's construction was limited to three design aspects: (1) a "lip" extending past the edge of the cosmetic holder, (2) a flat or flushed spine or hinge along the back of the case, and (3) the overall proportions depicted in the patent drawings. (A14-15). The design aspects chosen by the District Court to constitute the design do not represent the overall visual impression of the cosmetics palette design. Instead, they were <u>the particular design elements that MAC claimed, in its Reply brief, had differentiated the accused devices from the patented design</u>. (A14, A872).

The District Court proceeded to undertake its infringement analysis using a claim construction consisting of only those elements that MAC contended differentiated the patented design from the accused product. In doing so, the District Court maintained that it was not examining the three elements under the "point of novelty" test, but instead was considering the design aspects that an ordinary observer would consider. (A16-18).

E.     <u>The District Court Erred By Inferring A Proposed Claim Construction On Behalf Of MAC.</u>

The District Court improperly selected a proposed claim construction on behalf of MAC. Z Produx had no opportunity to rebut a claim construction advanced by MAC because none was proffered. The District Court used a passage it found in MAC's reply brief and stated that MAC had proposed the passage as its proposed claim construction. (A14-15). MAC had made no such proposal.

The District Court erred in the first instance by performing a claim construction where such construction was not in dispute. MAC's failure to argue a proposed claim construction by implication should have constituted acceptance of Z Produx's proposed claim construction.

Second, Z Produx was prejudiced in that there was no MAC-proposed claim construction for it to dispute.

Z Produx urged the District Court to refrain from providing a detailed description of the elements of the claimed design. The District Court erred by failing to construe the design in accordance with Z Produx's proposed construction, and by construing the claimed design, using seemingly arbitrary aspects of the design.

F.    The District Court Erred By Weighing The Evidence.

The District Court erred by weighing the credibility of evidence relating to the alleged functionality of certain design aspects.  In its Motion, MAC argued that certain design aspects are valued by Z Palette's customers for their usefulness instead of their ornamental value.  (A104).  In support, MAC cited a portion of Ms. Shteysel's deposition testimony: "[Customers of the Z Palette] like the window and that you can see through it. They like that you can customize it anyway you want so you can fit any size product, any brand, all in one palette, interchangeable." *Id*.

While MAC pointed to one reason for the clear window on the lid of the palette, Ms. Shteysel's declaration stated two reasons:

> The reason that my design includes a clear window on the front is two-fold:  (1) users can see what's inside; and (2) I preferred the aesthetic appearance of the windowed top.  I believe the windowed top is more visually appealing as opposed to a plain solid top.

(A844).

In addition, Ms. Shteysel's deposition testimony provided support for evidence of ornamentation ("I just like the look of it with the clear window, as opposed to just a boring kind of black solid top.")  (A140).

Nevertheless, MAC alleged that Ms. Shteysel's declaration was conclusory, self-serving, and lacked supporting evidence.  (A881).  The appropriate procedure to deal with a declaration allegedly lacking proper support is a motion to strike. MAC did not move to strike Ms. Shteysel's declaration.

Z Produx countered that the declaration was fully supported by her deposition testimony. (A939). Ms. Shteysel testified at her deposition that one of the reasons she likes the clear window is "I just like the look of it with the clear window, as opposed to just a boring kind of black solid top." (A140). Ms. Shteysel also testified that one of the reasons her palette has no inserts on the inside is that "it looks very clean and uncluttered so you can see through and just see a nice clean empty pan." *Id*.

Functional design elements can be claimed when they serve a primarily ornamental purpose, e.g., in circumstances where there are several ways to achieve the underlying function. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117. 1123 (Fed. Cir. 1993). Resolving "[w]hether a patented design is a functional or ornamental is a question of fact." *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006). Z Produx has provided probative evidence of several available alternative designs. (A726-732, A842-845, A862). MAC does not dispute this. (A921). Therefore, Z Produx's choices with regard to the challenged design aspects can reasonably be said to be dictated by ornamental considerations. Here, Z Produx has shown that a fact issue exists as to whether the clear window and the lack of inserts are primarily aesthetic or functional features. This precludes resolution of the issue on summary judgment.

The District Court erred in two ways.  First, because MAC failed to move to strike the declaration, the District Court erred in discounting Ms. Shteysel's declaration.  Second, the District Court weighed the two assertions and, as stated in its order, gave little weight to Ms. Shteysel's assertions that the window provided aesthetic functions.  (A12 at n.2).  The District Court dismissed Ms. Shteysel's declaration as conclusory, yet it was no more conclusory than the deposition statements that were relied upon by the District Court.  Indeed, as detailed above, Ms. Shtesysel's deposition testimony provides support for evidence of both functionality and ornamentation.  In addition, the statements in Ms. Shteysel's declaration did not contradict the statements made in her deposition.  In fact, both the declaration and the deposition testimony offered that there was more than one reason why the lid of the palette design included a clear window.  The District Court improperly weighed the evidence on summary judgment.

## II.  The District Court's Infringement Analysis Failed To Apply The "Ordinary Observer" Test To The Overall Visual Impression Of The Patented Design And Impermissibly Compared An Embodiment Of The Patented Design With The Accused Device.

### A.  Standard of Review

This Court reviews a district court's grant of summary judgment under the law of the regional circuit.  *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 420 F.3d 1364, 1366 (Fed. Cir. 2005).  The Ninth Circuit reviews grants of

21

summary judgment *de novo*.  *Engine Mfrs. Ass'n v. S. Coast Air Quality Maint. Dist.*, 498 F.3d 1031, 1035 (9th Cir. 2007).

B.    <u>Applicable Law</u>

1.    Ordinary Observer Test

A patent may be obtained for the ornamental design of an article of manufacture: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 171 (2006). The Federal Circuit, relying on Supreme Court precedent, has established the familiar "ordinary observer" test for design patent infringement. Under the ordinary observer test, an accused device infringes upon a design patent if "'in the eye of an ordinary observer, giving such attention as a purchaser usually gives,'" the design of the accused device and the patented design are "'substantially the same.'" The designs are "'substantially the same, if the resemblance [between the accused device's design and the patented design] is such as to deceive [an ordinary] observer, inducing him to purchase one supposing it to be the other.'" *Egyptian Goddess*, 543 F.3d 665 at 670 quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871).  In applying the ordinary observer test, the focus should be on "the overall design" of the patent.  See *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-41 (Fed. Cir. 2009).

MAC's Motion was essentially an attempt to encourage the District Court to adopt MACs position on infringement. The Court cannot do this without invading the province of the jury to determine infringement under the "ordinary observer" test. See *Egyptian Goddess*, 543 F.3d at 677. ("An ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design.").

The ordinary observer test applies to the patented design in its entirety, as it is claimed. *See Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992). "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Payless Shoesource*, 998 F.2d at 991 (quoting *Litton Sys., Inc. v. Whirlpool*, 728 F.2d 1423, 1444 (Fed. Cir. 1984))." 598 F.3d 1294, 1303 (Fed. Cir. 2010). "The proper comparison requires a side-by-side view of the drawings of the [] patent design and the accused products." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed. Cir. 2010).

> Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence. In *Egyptian Goddess*, we held that "the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." The patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design. In our recent *Crocs* decision, we set out in detail how an ordinary observer analysis could

be conducted to determine infringement. In analyzing whether a design patent on footwear was infringed, noting the various differences that could be found between the two pieces of footwear in question, we compared their overall effect on the designs. We looked to ornamental elements such as the curves in the design, the strap assembly, and the base portion of the footwear. We concluded that both the claimed design and the accused designs contained those overall ornamental effects, thereby allowing for market confusion.

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) (internal citation omitted).

"The ordinary observer test similarly applies in cases where the patented design incorporates numerous functional elements." *See Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006) (holding that while it is proper to factor out the functional aspects of various design elements, that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison). Evaluating infringement, we determine whether "the deception that arises is a result of the similarities in the overall design, not of similarities in ornamental features in isolation." *Amini Innovation*, 439 F.3d at 1371." *Id.*

2.    Comparison With Z Produx's Commercial Embodiment

In the infringement analysis, the comparison should be between the patent drawings and the accused device. "The proper comparison requires a side-by-side view of the drawings of the [] patent design and the accused products." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed. Cir. 2010); see also *Sun Hill*

*Industries, Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995) ("[t]he test for infringement is not whether the accused product is substantially similar to the patentee's commercial embodiment of the claimed design").

C.    The District Court Erred By Failing To Apply The Ordinary Observer Test.

The District Court's improper claim construction distorted the infringement analysis by the ordinary observer viewing the design as a whole.  The District Court confined its analysis to discrete design elements of the patented design and the accused device.  By comparison, this Court has held that the "sole test" for determining infringement was the "ordinary observer test" and that the comparison between the claimed and accused designs should be performed "through the eyes of an ordinary observer familiar with the prior art." *Egyptian Goddess*, 543 F.3d 665 at 677.  The District Court did not compare the claimed and accused designs as would an ordinary observer.

In essence, the District Court attempted to place itself in the position of a hypothetical ordinary observer.  However, the District Court did not appear to familiarize itself with the relevant prior art.  The ordinary observer is presumed to be able to distinguish the patented design from the prior art designs.  The District Court failed to consider the vastly different visual impressions offered by the prior art cosmetics palettes appearing in the briefings.    The District Court

25

inappropriately substituted its judgment for that of the ordinary observer, that person familiar with the array of cosmetics palette designs on the market.

The District Court erred by comparing individual design elements without considering their effect on the entire visual design. Most importantly, the District Court failed to consider the designs as a whole, as it should have under the ordinary observer test.

*In Egyptian Goddess*, this Court held "Our rejection of the point of novelty test does not mean, of course, that the differences between the claimed design and prior art designs are irrelevant. To the contrary, examining the novel features of the claimed design can be an important component of the comparison of the claimed design with the accused design and the prior art. But the comparison of the designs, including the examination of any novel features, must be conducted as part of the ordinary observer test, <u>not as part of a separate test focusing on particular points of novelty that are designated only in the course of litigation</u>." 543 F.3d at 678 (emphasis added).

It is improper to focus on specific features that differ between the two designs if such a focus ignores the critical issue of whether the overall designs, as a whole, are substantially similar. *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006) (stressing that the trial court must "analyz[e] the design as a whole from the perspective of an ordinary observer" and

must avoid relying simply on an "element-by-element comparison" of the patented design and alleged infringing device).

In addition, the District Court did not perform any other comparative analysis, e.g., identifying the visual features of the palettes that were most striking to the eye. Under the ordinary observer test, the District Court should have also considered those aspects of the distinctive appearance "most impressive to the eye" and whether such aspects are shared by the patented and accused designs. *Gorham Co. v. White*, 81 U.S. 511, 529 (1871).

In sum, the District Court failed to properly consider the ultimate question of whether the overall visual effects of the designs could have been found by an ordinary observer to have been substantially the same.

D.    The District Court Erred By Finding That Z Produx Accused Infringement Of Only Two Elements Of Its Patented Design.

The District Court erroneously arrived at the misplaced belief that Z Produx had "pointed to only two elements of the '743 design which it alleges are infringed." (A16). The District Court mistakenly believed that Z Produx needed to enumerate the individual design features that it believed were infringing. Z Produx claimed that the accused MAC product infringed its patent because it "embodies the overall visual impression claim in D642,743." (A715-716).

Z Produx described the ornamental features claimed in its patented design as "the overall visual appearance of the design." (A548-549). When asked to

27

identify and describe the features of the accused device that infringe its patent, Z Produx replied that "[t]he MAC product 'Pro Palette Large/Single,' embodies the overall visual impression claimed in D642,743." (A549-550).

The District Court erred by finding that "Z Produx has pointed to only two elements of the '743 design which it alleges are infringed by the MAC Palette: (1) the clear cover and (2) the empty base." (A16). Z Produx clearly disputed this. (A855-856). The District Court mistakenly relied on a response to an interrogatory on another subject when attempting to identify the design elements that Z Produx accused of infringement. (A552-554). Z Produx's interrogatory response relied on by the Court was in response to an interrogatory asking "when, where and how" Z Produx had become aware of MAC's infringement. *Id*. Z Produx responded that its president, Ms. Zena Shteysel had viewed a picture of the infringing MAC palette "on someone's Instagram" and noted that it had features "just like the Z Palette" including a clear window and an open base design. *Id*. It was MAC's Interrogatory No. 7 that asked about the features of the accused product that embody the patented design.

As a preliminary matter, Z Produx need not identify individual or particular design elements of a design of infringement under the law of *Egyptian Goddess*. Accordingly, in response to MAC's Interrogatory No. 7 that asked about the features of the accused product that embody the patented design. Z Produx

28

responded that the accused MAC palette "embodies the overall visual impression claim in D642,743. (A549-550).

> **E.** **The District Court Erred By Making A Comparison Between The Accused Device And The Commercial Embodiment Of Z Product's Underlying Article of Manufacture.**

The District Court found "the MAC Palette has an overall slimmer look than the '743 patent and its Z Palette embodiment, owing to the designs' differing proportions." The District Court actually made two dimensional comparisons, both of which constituted error: (1) a dimensional comparison between the accused device and the dimensions of the patent's figures; and (2) a dimensional comparison between the accused device and the Z Palette, Z Produx's commercial embodiment of its design.

> **1.** Comparison With Dimensions Of The Patent's Figures

The District Court found that the window pane in the '743 design made up 67% of the square inches of the lid, with the opaque rim making up the remaining 33%. (A16). The District Court also found that window pane of the accused MAC Palette made up 84% of the lid, as compared to 16.2% made up by the rim. (A16-17).[2]

---

[2] The District Court also erred by considering additional facts submitted by MAC for the first time in its Reply Brief, specifically, the purported dimensions of the patent figures submitted as Oct. 7, 2013 Mahlum Decl. ¶ 3. (A16, A891).

The District Court erred by using calculations and measurements of proportions to limit the scope of Z Produx's patent. In *PHG Techs., LLC v. St. John Cos.*, the defendant argued that a medical label design was dictated by function and invalid because the labels had to be used with particular software and had to fit into a standard laser printer. The court disagreed and stated that the design patent included "no limitations as to the size of the label sheet, no requirement that the label sheet fit in a standard printer or be made from specific materials such as laser stock, and no specification that the label sheet be able to run through a high temperature laser printer." *PHG Techs., LLC v. St. John Cos.*, 529 F. Supp. 2d 852, 863 (2007) (emphasis added). This Court agreed in another case when it reversed summary judgment while holding that the design patent for an "ornamental design for a container to fit a vehicle cup receptacle" contained "no height or volume limitations, no requirements that the container fit in the majority of car cup holders, and no stability limitations imposed by the claim." *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997).

## 2.    Dimensional Comparison With Z Palette

The District Court inappropriately made comparisons between the accused device and the commercial embodiment of Z Produx's underlying article of manufacture. In doing so, the District Court improperly imposed limitations on the scope of Z Produx's design patent. See *PHG Techs., LLC v. St. John Cos.*, 529 F.

Supp. 2d 852, 859 (M.D. Tenn. 2007) citing *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452 (Fed. Cir. 1997).

The comparison should be made between the '743 patent and the accused device. Z Produx has the right to slightly modify the dimensions of its Z-Palette, while still embodying the design of the '743 patent. In addition, the '743 patent includes no limitations as to its size, nor any exact proportions. (A20-26). MAC offered no evidence to the contrary. (A921).

As explained above, the District Court found that window pane of the accused MAC Palette made up 84% of the lid, as compared to 16.2% made up by the rim. The District Court also found that the window pane of the Z Palette made up 61% of the square inches of the lid, with 39% made up by the opaque rim. (A16). The District Court then concluded that "[t]he differing proportions make the **products** clearly distinguishable upon first glance." (A17) (emphasis added to illustrate that the District Court focused on the respective commercial embodiments of the parties).

The District Court erred by evaluating whether the accused MAC palette was substantially similar to the Z Palette, Z Produx's commercial embodiment of its claimed design. *Sun Hill Industries, Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995) ("[t]he test for infringement is not whether the accused

product is substantially similar to the patentee's commercial embodiment of the claimed design").

The District Court's improper claim construction, which designated as protectable only those design aspects that MAC contended were different between the patented design and accused designs, largely undermined the substantial evidence of actual confusion reported by cosmetics palettes customers – the better-informed ordinary observers.  (A716-717).  While the marketplace revealed the high level of product confusion in the marketplace, the District Court found that "once unclaimable features are factored out -- an ordinary observer could not confuse the two products."  (A18).  Citing *OddzOn*, the District Court's position puts a design patentee attempting to enforce its rights into an untenable position. On summary judgment, the patentee is effectively forced to accurately anticipate the particular combination of design elements that the court will find protectable as part of its claim construction, and then marshal evidence of confusion that is tied only to those design elements, and not to any other elements that the court excluded from consideration.  The clear beneficiaries of this process are the infringers, despite any amount of evidence of product confusion in the marketplace.

In the instant case, the District Court dismissed the substantial compilation of product confusion examples submitted by Z Produx by summarily stating that

the confusion examples merely constituted evidence that consumers were confused "because of the shared clear cover and empty base." (A16, A716-717, A743-799). An examination of the confusion examples reveals that the confusion was much more broad-based than that described by the District Court, and indicated consumer confusion based on the overall visual impression of the products. *Id*.

In addition, the District Court erred by applying the incorrect standard to its conclusion. The issue on summary judgment is not whether the District Court found the accused device distinguishable from the claimed design. The proper standard is whether a reasonable jury, comparing the patented design with the accused design in the role of an ordinary observer, could not have found otherwise.

F.    The District Court Erred By Ignoring Its Own Claim Construction When Performing Its Infringement Analysis.

The District Court erred by performing its infringement analysis using design aspects that were not included in the Court's claim construction, and also by failing to include in its infringement analysis design aspects that were included in its claim construction. The District Court's construction was limited to three design aspects: (1) a "lip" extending past the edge of the cosmetic holder, (2) a flat or flushed spine or hinge along the back of the case, and (3) the overall proportions depicted in the patent drawings. (A14-15).

The District Court erred by considering in its infringement analysis "two seams or ridges along each side" of the claimed design, elements not included in the Court's claim construction. (A17).

The District Court also erred by failing to include in its infringement analysis "the overall proportions depicted in the patent drawings" – the third element included in its own claim construction. The District Court used certain dimensions provided by MAC to describe the accused palette, but not others. (A16, A17, A110, A111).

As admitted by MAC, "[t]he accused MAC Palette is approximately 4 3/8 inches wide and 7 inches long." (A110). MAC also admitted that "[t]he measurement of the entire palette [design of the '743 patent] is 2.625 inches by 4.375 inches". (A891). A simple calculation reveals that the ratio of width to length of the accused MAC palette is 62.5% (4.375 divided by 7). Similarly, the same ratio in the claimed design is 62.5% (2.625 divided by 4.375). According to MAC's own measurements, the proportions are *__identical__*. Hence, the District Court erred by failing to apply its own claim construction to find that the overall proportions of the accused MAC palette are identical to those of Z Produx's claimed design. Instead, the District Court found that the proportions of the window sizes found on the lid, an element that the District Court had presumably excluded from consideration after concluding that the window was functional,

differed and concluded that "[t]he differing proportions make the products clearly distinguishable upon first glance."  (A17).

Given that the District Court found the clear window on the lid function, it should not have compared the window proportions on the lid.  The District Court should have compared the overall proportions of the accused palette with the claim design.  As the above analysis indicates, the District Court should have reached a result opposite from its conclusion.

## CONCLUSION

This Court should reverse the final judgment of the District Court and remand with instructions to the District Court to vacate its claim construction and enter the construction "an ornamental design for a cosmetics palette as shown in Figure 1"; this Court should further reverse the findings of summary judgment of no infringement by the District Court.

Respectfully Submitted,

Dated:  February 3, 2014           By:  */s/ Robert D. Katz*
                                         Robert D. Katz
                                         Katz PLLC
                                         6060 N. Central Expressway, Suite 560
                                         Dallas, Texas 75206
                                         214.865.8000 (Firm)
                                         888.231.5775 (Facsimile)
                                         rkatz@katzlawpllc.com

                                         *Counsel for Plaintiff-Appellant*
                                         *Z Produx, Inc.*

## <u>ADDENDUM TABLE OF CONTENTS</u>

<u>**PAGE**</u>

Judgment
     filed November 8, 2013 ................................................................A1

Order of
The Honorable Dean D. Pregerson
Granting Defendant's Motion for Summary Judgment
     filed November 5, 2013 ................................................................A3

United States Patent No. D642,743 S
     dated August 2, 2011 ................................................................A20

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
David Martinez, Bar No. 193183
DMartinez@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:   310-552-0130
Facsimile:   310-229-5800

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Jan M. Conlin (pro hac vice)
Thomas C. Mahlum (pro hac vice)
Larina A. Alton (pro hac vice)
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402-2015
Telephone:  612-349-8500
Facsimile:   612-339-4181

Attorneys for Defendant and Counterclaimant,
Make-Up Art Cosmetics, Inc.

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Z PRODUX, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>MAKE-UP ART COSMETICS, INC.,<br><br>   Defendant. | Case No.  CV 13-00734 DDP (RZx)<br><br><br>JUDGMENT |
| MAKE-UP ART COSMETICS, INC.,<br><br>   Counterclaimant,<br><br>v.<br><br>Z PRODUX, INC.<br><br>   Counterclaim-Defendant. | |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**A 1**

1    Pursuant to the Court's November 5, 2013 Order, the Court enters the
2    following judgment:
3    IT IS ORDERED AND ADJUDGED that judgment is entered in favor of
4    Defendant MAKE-UP ART COSMETICS, INC., and the Complaint is
5    DISMISSED with PREJUDICE.  An adjudication as to costs to be entered in favor
6    of Defendant MAKE-UP ART COSMETICS, INC. under Local Rule 54 is to
7    follow.
8
9    **LET JUDGMENT BE ENTERED ACCORDINGLY.**
10
11
12    Dated: November 08, 2013
13
14
15
16
17    DEAN PREGERSON
18    UNITED STATES DISTRICT JUDGE
19
20
21
22
23
24
25
26
27
28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

**A 2**

O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Z PRODUX, INC.,                    )   Case No. CV 13-00734 DDP (RZx)
                                   )
             Plaintiff,            )   **ORDER GRANTING DEFENDANT'S MOTION
                                   )   FOR SUMMARY JUDGMENT**
        v.                         )
                                   )   [DKT No. 35]
MAKE-UP ART COSMETICS, INC.,       )
                                   )
             Defendant.            )
                                   )
_____      )


     Before the court is Make-Up Art Cosmetic, Inc.'s ("MAC")
Motion for Summary Judgment.  The motion is fully briefed.[1]  Having
considered the parties' submissions and heard oral argument, the
court now adopts the follow order.

**I.   Background**

     Z Produx, Inc. ("Z Produx") and MAC are competitors in the
arena of cosmetics accessories. This case centers on MAC's alleged
infringement of a design patent held by Z Produx for a makeup
palette.

_____

     [1] The court allowed Z Produx, Inc. to file a surreply.

**A 3**

1    Zena Shteysel, the president of Z Produx, is the named
2  inventor of U.S. Patent No. 642,743 ("the '743 patent"), a design
3  patent for a cosmetics holder. (See Declaration of Thomas Mahlum in
4  Support of Motion, Ex. A.) Shteysel applied for the design patent
5  on April 14, 2010 and it was issued August 2, 2011. (Id.) Shteysel
6  subsequently assigned the patent to Z Produx on May 17, 2012. (Id.,
7  Ex. B.) The patent includes a single claim for "[t]he ornamental
8  design for the cosmetic holder, as shown and described." (Id., Ex.
9  A at 6.) The patent includes 14 figures depicting, from various
10  perspectives, a cosmetic holder with a clear top and an empty base.
11  (Id. at 6-12) As discussed further below, the design depicted has a
12  "book-like" appearance, with a flat spine and sides that extend
13  slightly beyond the middle part of the device. (Id.) It has a
14  relatively wide rim framing the window to the compartment. (Id.)

15    Z Produx markets the "Z Palette," a cosmetics palette that
16  resembles the '743 design patent and includes the text "Pat.
17  D642,743" on the bottom of the device. (See Id., Ex. 10, 73; Ex.
18  Z.) The products sold by Z Produx consist only of the Z Palette and
19  two types of related accessories (metal pans and metal stickers).
20  (Id., Ex. C (Deposition of Zena Shteysel at 8:17-10:23).)

21    On April 14, 2010, the same day on which Shteysel applied for
22  the design patent, Shteysel also applied for a utility patent for a
23  cosmetics holder. (Id., Ex. K. at 180, Patent Application No. 12-
24  760029.) The application claimed, among other things, a cosmetics
25  holder including a metal base made of magnetized metal, a recess
26  for receiving metal makeup containers, and a top frame "defin[ing]
27  a window for viewing the makeup containers that are supported on
28  the magnetic base, when the cover assembly is closed." (Id. at

**A 4**

188.) Each of the application's five claims were rejected by the
U.S. Patent and Trademark Office as anticipated by existing
patents. (Id. at 222-226.) The claim asserting a framed window for
viewing makeup containers while the cover assembly is closed was
rejected as obvious in view of the Liden patent, U.S. Patent No.
D597256, which has been assigned to Defendant MAC. (Id. at 224; MSJ
at 8.)

        MAC markets, among other products, a cosmetic palette called
the MAC Pro Palette Large/Single ("MAC Palette"). (Complaint, DKT.
No. 1 ¶ 11.) Like the Z Palette, the MAC Palette consists of an
empty base container with clear window top. (See Mahlum Decl. Ex.
AA.) However, as discussed below, unlike the Z Palette, the MAC
Palette has edges that are flush with one another, a triangle-
shaped hinge, and a relatively narrow rim framing the window. (See
Id., Exs. M, N, and AA.)

        Z Produx alleges that MAC's sale of the MAC Palette infringes
its '743 design patent in violation of 35 U.S.C. § 271(a).


        **II.  Legal Standard**

        Summary judgment is appropriate where the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show "that there is no
genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party
seeking summary judgment bears the initial burden of informing the
court of the basis for its motion and of identifying those portions
of the pleadings and discovery responses that demonstrate the
absence of a genuine issue of material fact. See Celotex Corp. v.

3

**A 5**

1  <u>Catrett</u>, 477 U.S. 317, 323 (1986). All reasonable inferences from

2  the evidence must be drawn in favor of the nonmoving party. <u>See</u>

3  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 242 (1986). If the

4  moving party does not bear the burden of proof at trial, it is

5  entitled to summary judgment if it can demonstrate that "there is

6  an absence of evidence to support the nonmoving party's case."

7  <u>Celotex</u>, 477 U.S. at 323.

8       Once the moving party meets its burden, the burden shifts to

9  the nonmoving party opposing the motion, who must "set forth

10  specific facts showing that there is a genuine issue for trial."

11  <u>Anderson</u>, 477 U.S. at 256. Summary judgment is warranted if a party

12  "fails to make a showing sufficient to establish the existence of

13  an element essential to that party's case, and on which that party

14  will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

15  A genuine issue exists if "the evidence is such that a reasonable

16  jury could return a verdict for the nonmoving party," and material

17  facts are those "that might affect the outcome of the suit under

18  the governing law." <u>Anderson</u>, 477 U.S. at 248. There is no genuine

19  issue of fact "[w]here the record taken as a whole could not lead a

20  rational trier of fact to find for the nonmoving party." <u>Matsushita</u>

21  <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

22       It is not the court's task "to scour the record in search of a

23  genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1278

24  (9th Cir.1996). Counsel has an obligation to lay out their support

25  clearly. <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d 1026, 1031

26  (9th Cir.2001). The court "need not examine the entire file for

27  evidence establishing a genuine issue of fact, where the evidence

28

4

**A 6**

1  is not set forth in the opposition papers with adequate references
2  so that it could conveniently be found." Id.

3

4  **III. Discussion and Analysis**
5  **A. Validity of Patent**

6      "A patent is presumed to be valid, and this presumption can
7  only be overcome by clear and convincing evidence to the contrary."
8  Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368,
9  1374 (Fed. Cir. 2001) (citations omitted). One basis on which a
10 patent may be proved invalid is evidence that the invention was "in
11 public use" more than one year prior to the date of filing an
12 application. 35 U.S.C. 102(b)(2010). Prior public use may serve to
13 invalidate a design patent. In re Mann, 861 F.2d 1581, 1581-82
14 (Fed. Cir. 1988).

15     MAC argues that the '743 patent is invalid because the Z
16 Palette design was in public use more than a year before the '743
17 patent application was filed. (MSJ at 24.) MAC alleges that the
18 '743 design was depicted in a photograph of the Z Palette that was
19 included in a trademark application filed by Z Produx on February
20 12, 2009, more than a year before Shteysel filed an application for
21 the '743 design patent on April 14, 2010. (Id.; Mahlum Decl., Ex
22 A.) MAC alleges that the photograph was posted on the United States
23 Patent and Trademark Office website on February 12, 2009 and was
24 made available to the public upon request in print form. (MSJ at
25 24, citing Mahlum Decl., Ex G.) MAC asserts that these alleged
26 facts demonstrate that the patent is invalid.

27     Having considered the evidence before it, the court finds that
28 there is no basis for finding the '743 patent invalid. Even

**A 7**

1  assuming the photograph was publicly available on the date MAC

2  asserts, a contention Z Produx disputes, (Z Produx's Surreply at 1-

3  3), the disclosure was not sufficient to anticipate and thereby

4  invalidate the '743 patent.

5      For a prior art disclosure to be anticipatory, it must be

6  "'enabling' - i.e., it must be sufficient to permit a person having

7  ordinary skill in the art to practice the invention." SmithKline

8  Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1342 (Fed. Cir.

9  2005). "Pictures and drawings may be sufficiently enabling to put

10  the public in the possession of the article pictured. Therefore,

11  such an enabling picture may be used to reject claims to the

12  article. However, the picture must show all the claimed structural

13  features and how they are put together.' U.S. Patent and Trademark

14  Office, Manual of Patent Examining Procedure, § 2102.04 (citing

15  Jockmus v. Leviton, 28 F.2d 812 (2d Cir. 1928)).

16      The Z Produx trademark application included one picture of the

17  Z Palette photographed from above. (See Mahlum Decl., Ex G.) The

18  device's sides, edges, and contours are not visible. (Id.) The

19  photograph does not reveal numerous elements of the design which

20  were later reflected in the figures included in the '743 design

21  patent. Indeed, with the exception of the width of the palette's

22  rims, none of the elements included in the construction of the '743

23  patent proposed by MAC are apparent in the photograph. (See Reply

24  at 3, citing MSJ, Ex. A; Mahlum Decl., Ex. Y.) These elements

25  include a "lip" extending past the edged of the cosmetic holder and

26  the flat spine along the back of the case. (Id.) (MAC's proposed

27  construction is discussed further in the following subsection.)

28  Because the photograph does not contain sufficient detail to

**A 8**

1    constitute invalidating prior art for the '743 design patent, the

2    court must reject MAC's contention that the patent is invalid.

3    **B.   Patent Infringement**

4    **i.   Claim Construction**

5          To determine whether a design patent is infringed, the court

6    must first construe the claim to the design, where appropriate, and

7    then compare it to the design of the accused device. <u>OddzOn</u>

8    <u>Products, Inc. v. Just Toys, Inc.</u>, 122 F.3d 1396, 1404-05 (Fed.

9    Cir. 1997) (citing <u>Elmer v. ICC Fabricating, Inc.</u>, 67 F.3d 1571,

10   1577 (Fed. Cir. 1995)).

11         "A design patent protects only the novel, ornamental features

12   of the patented design," not its functional elements. <u>Id</u>; <u>see also</u>

13   <u>Lee v. Dayton-Hudson Corp.</u>, 838 F.2d 1186, 1188-91 (Fed. Cir. 1988)

14   ("[I]t is the non-functional, design aspects that are pertinent to

15   determinations of infringements. ... A device that copies the

16   utilitarian or functional features of a patented design is not an

17   infringement. ... [While] infringement can be found for designs

18   that are not identical to the patented design, such designs must be

19   equivalent in their ornamental, not functional, aspects."); <u>L.A.</u>

20   <u>Gear, Inc. v. Thom McAn Shoe Co.</u>, 988 F.2d 1117, 1123

21   (Fed.Cir.1993) ("The elements of the design may indeed serve a

22   utilitarian purpose, but it is the ornamental aspect that is the

23   basis of the design patent.") Where a design is found to include

24   both functional and ornamental features, the court must "factor[]

25   out" the functional aspects of the design for the purposes of claim

26   construction. <u>Richardson v. Stanley Works, Inc</u>., 597 F.3d 1288,

27   1293 (Fed. Cir. 2010).

28

**A 9**

1      Critical to the instant case is whether two aspects of the
2  palette depicted in the '743 patent--the clear top and empty
3  compartment--are ornamental and therefore protected or, instead,
4  functional and therefore unprotected. (See MJS at 20-24; Opp. at 8-
5  11.) As discussed further below, it is these elements that are the
6  subject of Z Produx's infringement action. A design is deemed to be
7  functional "when the appearance of the claimed design is dictated
8  by the use or purpose of the article." L.A. Gear, 988 F.2d at 1117
9  (internal citation and question marks omitted).

10     MAC asserts that the clear top and empty base are analogous to
11 design elements found functional in OddzOn. There, the Federal
12 Circuit construed a design patent covering a foam football with a
13 tail and fin structure. 122 F.3d at 1405. The court found that the
14 tail and fin structure was functional rather than ornamental, and
15 therefore unprotected, because those features served the purpose of
16 enabling the football to be thrown further than a traditional foam
17 football. Id. MAC argues that, like the tail and fin structure, the
18 clear top and empty compartment depicted in the '743 patent are
19 designed to serve specific purposes, namely allowing a user to see
20 the contents of her palette without opening it and to customize the
21 palette's contents. (MSJ at 23.) The court agrees that the analogy
22 to OddzOn is apt.

23     Z Produx argues that the clear top and empty compartment are
24 not dictated by design on the grounds that MAC "had plenty of
25 options when it came to alternative designs." (Opp. at 9.) It
26 argues that the palette merely "serves the purpose of holding
27 cosmetics" and points to various other cosmetic palettes that also
28

**A 10**

1   hold cosmetics but do not include the same clear window and empty

2   base features. (Id. at 9-10.)

3        Z Produx's argument is unavailing because it mistakenly

4   assumes that it is the functionality of the device as a whole,

5   rather than the functionality of the elements at issue, that

6   matters for the construction of a design patent. Indeed, in the

7   course of finding that the tail and fin structure on the foam

8   football in OddzOn were functional, the Federal Circuit

9   specifically rejected the approach Z Produx now asks the court to

10  adopt:

11       OddzOn argues that the shape of a football with an arrow-like

12       tail is an ornamental feature because "it is not required for

13       a tossing ball." While OddzOn correctly states that there are

14       many ways of designing "tossing balls," it is undisputed that

15       the ball in question is specifically designed to be thrown

16       like a football, yet travel farther than a traditional foam

17       football. It is the football shape combined with fins on a

18       tail that give the design these functional qualities. The tail

19       and fins on OddzOn's design add stability in the same manner

20       as do the tail and fins found on darts or rockets. They are no

21       less functional simply because "tossing balls" can be designed

22       without them.

23  122 F.3d 1406. The court went on to explain that the functional

24  characteristics limit the scope of the protected subject matter.

25  Id. The reasoning in OddzOn is controlling for the instant case.

26  Just as a tail and fins are not necessary to design a "tossing

27  ball," a clear cover and empty base are not necessary to design a

28  cosmetics pallette. Yet in both cases the additional elements bring

**A 11**

1  added functionality to the product, rendering them functional,

2  rather than ornamental, features.

3      Indeed, Z Produx has itself emphasized the functionality of

4  the features at issue. In explaining why consumers like the Z

5  Palette, Shteysel pointed to the functionality of the clear cover

6  and empty base, stating: "[Customers] like the window and that you

7  can see through it.  They like that you can customize it anyway you

8  want so you can fit any size product, any brand, all in one

9  palette, interchangeable." (Deposition of Zena Shteysel in Support

10  of Opposition at 94.)[2] (See also Shteysel Dep. at 103, 105, 109,

11  110.)

12      Moreover, the clear cover and empty base appear to be

13  essential for the functionality that these elements offer. As MAC

14  points out, there appears to be no other way to enable a user to

15  view the contents of her palette without opening it but to make the

16  cover see-through or to enable the customization of the palette's

17  contents without leaving the compartment empty. (Reply at 10.)

18  These considerations support a finding that the clear top and empty

19  base are "dictated by the use or purpose of the article," 988 F.2d

20  at 1117, and are therefore functional rather than ornamental.

21

22  _____

23      [2]The court gives little weight to subsequent assertions, made
by Ms. Shteysel in a declaration without assertions of factual

24  support, that the clear cover and empty compartment serve
aesthetic functions of making the palette look "more visually

25  appealing" and "uncluttered." (DKT No. 38, Ex. 12, at ¶¶ 9-10.  "A
conclusory, self-serving affidavit, lacking detailed facts and any

26  supporting evidence, is insufficient to create a genuine issue of
material fact." Fed. Trade Comm'n v. Publ'g Clearing House,

27  Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (citing Fed. Trade Comm'n
v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir.

28  1997)).

**A 12**

1    The finding that the clear window and empty base are
2  functional rather than ornamental is further supported by the fact
3  these features appear to be protected by existing utility patents.
4  As discussed above, at the time that Shteysel applied for what
5  became the '743 design patent, she filed an unsuccessful
6  application for a utility patent.  The application claimed a
7  cosmetic holder with, among other elements, a "frame in order to
8  define a window for viewing the makeup containers." (Mahlum Decl.,
9  Ex. K at 188.) The patent office rejected the window claim as
10 obvious in view of the Liden utility patent (Patent No. D597256),
11 which claimed a top frame with "a window for viewing the makeup
12 containers when the cover is in a closed position." (Id. at 224-
13 25.) As noted, the Liden utility patent, which looks very similar
14 to the '743 design patent, has been assigned to MAC. (MSJ at 8.)
15 The patent office likewise rejected the other four claims in
16 Shteysel's utility patent application, which described a cosmetic
17 holder with a magnetic base with a recess for receiving metal
18 makeup containers, in light of the Jimbo patent (Patent No.
19 5005697). (Id. at 222-24.) The existence of these prior utility
20 patents covering the elements at issue further indicate that the
21 clear top and empty base elements are functional.

22    In sum, the facts in evidence clearly demonstrate that the
23 clear cover and empty base are functional, not ornamental, and thus
24 are not protected under the '743 design patent and may not form the
25 basis for an infringement action. Having reached this conclusion,
26 the court must "factor out" the clear window and empty base
27 elements for the purposes of claim construction. See Richardson,
28 597 F.3d at 1293.

**A 13**

1    The court next must examine what remaining relevant design
2    features are ornamental and construe the claimed design
3    accordingly. MAC proposes the following construction of the '743
4    patent design for the purposes of its motion:

5        The '743 claims the ornamental features of a cosmetic holder
6        design that includes a "lip" extending past the edge of the
7        cosmetic holder, with a flat or flushed spine or hinge along
8        the back of the case, and with the overall proportions
9        depicted in its drawings.
10   (Reply at 3, citing MSJ, Ex. A; Mahlum Decl., Ex Y.)

11       Z Produx urges the court to refrain from providing any
12   description of the elements of the claimed design. Borrowing
13   language from the '743 design patent (which contains no verbal
14   description of the patented design), it asks the court to adopt the
15   construction: "an ornamental design for a cosmetics palette as
16   shown in Figure 1." (Opp. at 8.) In advancing this position, Z
17   Produx relies on Federal Circuit authority cautioning trial courts
18   to avoid excessive reliance on a detailed verbal description of a
19   patent infringement. Id. (citing Egyptian Goddess, Inc. v. Swisa,
20   Inc., 543 F.3d 665, 679 (Fed. Cir. 2008)). However, neither
21   Egyptian Goddess nor any other case of which this court is aware
22   has articulated the position that courts must refrain from any
23   verbal description of the elements whatsoever. Indeed, the Federal
24   Circuit specifically rejected this position in Richardson, raising
25   the question of "how a court could effectively construe design
26   claims, where necessary, in a way other than by describing the
27   features showing the drawings." 597 F.3d at 1293.

28       As discussed further below, the court takes the figures

12

**A 14**

1  included in the '743 design patent as its touchstones for its

2  infringement analysis. With that in mind, however, the court finds

3  it necessary to provide a brief verbal description of the relevant

4  claimed ornamental elements of the '743 design. It further finds,

5  based on its own careful review of the '743 patent, that MAC's

6  proposed characterization of the design is fair and accurate.  It

7  therefore adopts that description for the purposes of its

8  infringement analysis.

9

10  **ii.  Infringement**

11      Having construed the scope and relevant meaning of the '743

12  claim, the court must now compare the claim to the accused design

13  to determine whether there has been any infringement. <u>See</u> <u>Elmer v.</u>

14  <u>ICC Fabricating</u>, 67 F.3d 1571, 1577 (Fed. Cir. 1995). A design

15  patent is infringed if the patented design, or any colorable

16  imitation thereof, is applied without authorization to any article

17  of manufacture for the purposes of sale. 35 U.S.C. § 289; <u>Goodyear</u>

18  <u>Tire & Rubber Co. v. Hercules Tire & Rubber Co.</u>, 162 F.3d 1113,

19  1116-17 (Fed. Cir. 1998). To determine if an infringement has

20  occurred, the court applies the "ordinary observer test," whereby

21  the court must determine "whether an ordinary observer, familiar

22  with the prior art and designs, would be deceived into believing

23  that the accused product is the same as the patented design."

24  <u>Crocs</u>,598 F.3d 1303. The focus of the analysis is the "overall

25  impression of the claimed ornamental features" rather than "small

26  differences in isolation." <u>Id.</u> at 1303-04.

27      In the present case, the court finds that there is no triable

28  question as to whether the MAC Palette infringes the claimable

**A 15**

1  ornamental elements of the '743 design. Z Produx has pointed to
2  only two elements of the '743 design which it alleges are infringed
3  by the MAC Palette: (1) the clear cover and (2) the empty base.
4  See, e.g. (Mahlum Decl., Ex. S at Interrog. Resp. No. 10
5  (describing the claimed ornamental features in MAC accused products
6  as "contain[ing] a clear window and also featur[ing] an open empty
7  base design, just like the Z Palette") and Nos. 3 and 4 (describing
8  ornamental design elements of the '743 patent as "a clear window,
9  empty base, and … rectangular and square designs"); Shteysel Decl.
10 (testifying that that MAC Palette "looks like mine, and it has the
11 same features, clear window, empty base"). However, as discussed in
12 the preceding section, because these features are functional, they
13 are not entitled to protection under the '743 design patent and
14 must be factored out for the purposes of infringement analysis.
15 Thus, Z Produx has failed to point to any claimable design aspects
16 of '743 that are infringed by the MAC Palette.

17 Moreover, a comparison of the '743 design with the MAC Palette
18 reveals that, once the clear cover and empty base elements are
19 factored out, the designs bear little resemblance. MAC has pointed
20 to several areas which the court agrees bear consideration.

21 First, the MAC Palette has an overall slimmer look than the
22 '743 patent and its Z Palette embodiment, owing to the designs'
23 differing proportions. MAC notes, and Z Produx does not contest,
24 that the window pane in the '743 design makes up 67% of the square
25 inches of the lid, with the opaque rim making up the remaining 33%.
26 (Oct. 7, 2013 Mahlum Decl. ¶ 3.) Similarly, the window pane of the
27 Z Palette makes up 61% of the square inches of the lid, with 39%
28 made up by the opaque rim. (Mahlum Decl. ¶ 4.) By contrast, the

1  window pane of the MAC Palette makes up a substantially greater 84%
2  of the lid, as compared to 16.2% made up by the rim. (Id. ¶ 5.) The
3  differing proportions make the products clearly distinguishable
4  upon first glance.
5       Second, the '743 patent claims a cosmetic holder with a lip
6  that extends beyond the edge of the cosmetic holder, giving the
7  design a book-like appearance. (See id., Ex. A, Figs. 1, 4, 7, 8,
8  11.) The lip is also present in the Z Palette. (See id., Ex. 9.) By
9  contrast, the MAC Palette has edges that are flush.
10      Third, the '743 patent claims a design with two seams or
11  ridges along each side, in addition to the one where the case
12  separates, contributing further to the design's book-like
13  appearance. (See id., Ex. A, Figs. 1, 4, 7, 8, 11.) The MAC
14  Pallete, contrastingly, has no additional seams.
15      Fourth, the '743 design has a hinge that is flush with the
16  cosmetic case, resembling the binder of a book. (See id., Ex. A,
17  Figs. 4, 5.)  By contrast, the MAC Palette has a distinctive
18  triangular raised hinge. (Mahlum Decl., Ex. M.)
19      Z Produx urges that the court not consider such features as
20  the "individual corners, lips, seams, spine, and attributes" of the
21  products. (Opp. at 12.) Z Produx argues that consideration of such
22  elements is impermissible in light of the Federal Circuit's
23  abandonment of the "point of novelty" test. (Opp. at 12.) Under
24  this now discarded test, in order to find infringement, after
25  comparing the items through the eyes of an ordinary observer
26  whereby, the court was required to attribute the similarity to
27  novelty that distinguishes the patented device from prior art. See
28  Egyptian Goddess at 543 F.3d at 676-77. However, the court does not

15

**A 17**

1  consider such design elements under the "point of novelty" test,
2  but instead refers to these elements solely in the course of
3  explaining that--once unclaimable features are factored out--an
4  ordinary observer could not confuse the two products.
5       Z Produx has submitted quotations from online discussion
6  forums which it asserts show that consumers are confused by the
7  similarity between the Z Palette and the MAC Palette. (See
8  Opposition at 17-18; Declaration of Robert Katz in Support of
9  Opposition, Exs. 7, 6, 7, 8, 9.) However, leaving aside the
10 question of whether the evidence is admissible, the evidence does
11 not create a triable issue because none of the materials presented
12 tend to show that consumers perceived the MAC Palette as similar to
13 the Z Pallete because of shared ornamental features that are
14 protected by the '743 design patent, rather than because of the
15 shared clear cover and empty base, which are not protected by the
16 patent. See OdzzOn at 1406 ("Because the accused products are
17 clearly similar to OddzOn's design in terms of their football shape
18 and their tail and fins, it was incumbent on OddzOn to submit
19 evidence establishing that the ornamental aspects of their
20 football-with-tail-and-fin combination accounted for the similarity
21 perceived by the survey participants.")
22      In sum, the evidence before the court does not create a
23 triable question as to whether MAC infringed Z Produx's '743 design
24 patent through its sale of the MAC Palette.
25 ///
26 ///
27 ///
28 ///

**A 18**

**IV. Conclusion**

      For the reasons set forth above, the court GRANTS Defendant
Make-up Art Cosmetics, Inc.'s motion for summary judgment.

IT IS SO ORDERED.

Dated: November 5, 2013

                                        _____
                                        DEAN D. PREGERSON
                                        United States District Judge

17

**A 19**



US00D642743S

(12) **United States Design Patent**      (10) **Patent No.:**      **US D642,743 S**

Shteysel      (45) **Date of Patent:**      ** **Aug. 2, 2011**

(54) **COSMETIC HOLDER**

(76) Inventor:   **Zena Shteysel**, Sherman Oaks, CA (US)

(**) Term:   **14 Years**

(21) Appl. No.: **29/359,687**

(22) Filed:   **Apr. 14, 2010**

(51) **LOC (9) Cl.** .................................... **28-03**

(52) **U.S. Cl.** ............................................ **D28/83**

(58) **Field of Classification Search** ................. 206/823,
206/581; D28/73, 76–84, 64.1; 132/286–288,
132/293–307, 314–318
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| D422,120 S | * | 3/2000 | Orsomando | D28/83 |
| D453,859 S | * | 2/2002 | Spearman | D28/77 |
| D477,895 S | * | 7/2003 | Goswell | D28/83 |
| D480,837 S | * | 10/2003 | Liu | D28/83 |
| D485,018 S | * | 1/2004 | Beilman | D28/77 |
| D503,245 S | * | 3/2005 | Vanoncini | D28/78 |
| D597,256 S | * | 7/2009 | Liden | D28/83 |
| D601,757 S | * | 10/2009 | Sagel | D28/83 |
| D603,564 S | * | 11/2009 | Liden | D28/83 |

* cited by examiner

*Primary Examiner* — Jennifer Rivard

(74) *Attorney, Agent, or Firm* — Stroock & Stroock & Lavan
LLP

(57)      **CLAIM**

The ornamental design for the cosmetic holder, as shown and
described.

**DESCRIPTION**

FIG. **1** is a perspective view of the cosmetic holder in accordance with a first embodiment of the invention;

FIG. **2** is a top plan view thereof;

FIG. **3** is a front elevational view thereof;

FIG. **4** is a side elevational view thereof from either side thereof;

FIG. **5** is a rear elevational view thereof;

FIG. **6** is a bottom plan view thereof;

FIG. **7** is a perspective view of the cosmetic holder depicted in FIG. **1**, with cosmetic containers therein (which cosmetic containers form no part of the claimed design);

FIG. **8** is perspective view of the cosmetic holder in accordance with a second embodiment of the invention;

FIG. **9** is a top plan view thereof;

FIG. **10** is a front elevational view thereof;

FIG. **11** is a side elevational view thereof from either side thereof;

FIG. **12** is a rear elevational view thereof;

FIG. **13** is a bottom plan view thereof; and,

FIG. **14** is a perspective view of the cosmetic holder depicted in FIG. **8**, with cosmetic containers therein (which cosmetic containers form no part of the claimed design).

The broken lines shown in the drawings illustrate cosmetic containers and form no part of the claimed design.

**1 Claim, 6 Drawing Sheets**







FIG.1



FIG.2



FIG.3

FIG.5

FIG.4

FIG.6



FIG.7



FIG.8



FIG.9



FIG.10



FIG.12

FIG.13



FIG.11



# FIG.14

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that, on this the 3rd day of February, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

> Larina A. Alton
> Ms. Jan Marie Conlin
> Thomas Mahlum
> David Martinez
> ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
> 800 LaSalle Avenue
> 2800 LaSalle Plaza
> Minneapolis, MN 55402
> (612) 349-0917
>
> *Counsel for Appellee*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

Dated:  February 3, 2014          By:  /s/ *Robert D. Katz*_____
                                       Robert D. Katz
                                       Katz PLLC
                                       6060 N. Central Expressway, Suite 560
                                       Dallas, Texas 75206
                                       214.865.8000 (Firm)
                                       888.231.5775 (Facsimile)
                                       rkatz@katzlawpllc.com

                                       *Counsel For Plaintiff-Appellant*
                                       *Z Produx, Inc.*

**<u>CERTIFICATE OF COMPLIANCE</u>**
**With Type-Volume Limitation, Typeface Requirements,**
**And Type Style Requirements**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains <u>7,863</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.


Dated:  February 3, 2014         By:  <u>*/s/ Robert D. Katz*</u>
                                  Robert D. Katz
                                  Katz PLLC
                                  6060 N. Central Expressway, Suite 560
                                  Dallas, Texas 75206
                                  214.865.8000 (Firm)
                                  888.231.5775 (Facsimile)
                                  rkatz@katzlawpllc.com

                                  *Counsel For Plaintiff-Appellant*
                                  *Z Produx, Inc.*