## Appeal No. 14–1143

In The
United States Court of Appeals
For the Federal Circuit

Z Produx, Inc.,

*Appellant,*

v.

Make-Up Art Cosmetics, Inc.,

*Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
Case No. CV 13–00734 DDP

### BRIEF OF APPELLEE MAKE-UP ART COSMETICS, INC.

| | |
|---|---|
| **NON-CONFIDENTIAL**<br><br>March 19, 2014 | ROBINS, KAPLAN, MILLER & CIRESI L.L.P.<br>Jan M. Conlin (MN #192697)<br>Thomas C. Mahlum (MN #259391)<br>Larina A. Alton (MN #0388332)<br>David Martinez (CA #193183)<br><br>2800 LaSalle Plaza, 800 LaSalle Avenue<br>Minneapolis, MN 55402–2015<br><br>Tel: 612–349–8500<br>Fax: 612–339–4181<br><br>*Attorneys for Appellee*<br>*Make-Up Art Cosmetics, Inc.* |

## Certificate of Interest

Counsel for Appellee Make-Up Art Cosmetics, Inc. certifies the following:

(1) The full name of every party or amicus represented in the case by the undersigned attorney is as follows:

Make-Up Art Cosmetics, Inc.

(2) The name of the real party in interest is the same as stated in Paragraph 1.

(3) The names of all parent corporations and publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented are:

Estee Lauder Companies, Inc.

(4) The names of all law firms and the partners and associates that have appeared for the party in the lower tribunal or are expected to appear for the party in this court are as follows:

Jan M. Conlin
Thomas C. Mahlum
David Martinez
Larina A. Alton
Robins, Kaplan, Miller & Ciresi L.L.P.

March 19, 2014                    Respectfully submitted,


 /s/ Thomas C. Mahlum
Thomas C. Mahlum

# Table of Contents

Table of Authorities ................................................................... v

Statement of Related Cases.................................................viii

Statement of Facts ..................................................................... 1

   I.  U.S. Patent No. D642,743 ............................................. 1

     A.  The Z Palette is the product that embodies the ´743 Design Patent. ........................................................... 3

     B.  The USPTO rejected Ms. Shteysel's related utility patent.................................................................... 5

  II.  MAC Pro Palette Large Single .................................... 7

 III. Procedural Background ............................................... 9

     A.  The District Court properly construed the ´743 Design Patent..................................................................... 11

     B.  The District Court properly concluded that the MAC Palette did not infringe the ´743 Design Patent. ............... 14

Summary of the Argument .................................................... 16

Argument ................................................................................. 18

   I.  Standard of Review .................................................... 18

  II.  The District Court Properly Construed the ´743 Design Patent............................................................................ 19

     A.  The District Court did not err in excluding functional elements from the claim construction. ................................ 20

     B.  The District Court did not err in using limited phraseology to describe the claim of the ´743 Design Patent..................................................................... 28

C.   The District Court did not err in adopting a proposed
     claim construction from MAC's briefing. ........................... 31

III. The District Court's Infringement Analysis Was Proper ...... 31

A.   The District Court properly analyzed non-infringement
     in view of the ´743 Design Patent as depicted in its
     drawings. ............................................................................ 32

B.   The District Court applied the "ordinary observer" test
     and not the "points of novelty" test. ................................. 36

C.   The District Court did not err in considering
     Z Produx's infringement contentions in connection
     with summary judgment ...................................................... 38

D.   The District Court's reference to the proportions of the
     ´743 Design Patent and those of Z Produx's commercial
     embodiment was proper. ..................................................... 39

E.   The District Court did not "ignore its own
     construction." ...................................................................... 41

Conclusion and Statement of Relief Sought ........................................ 44

# Table of Authorities

## Cases

*Berry Sterling Corp. v. Prescor Plastics, Inc.*,
122 F.3d 1452 (Fed. Cir. 1997) ........................................................ 21, 40

*Butamax(TM) Advanced Biofuels LLC v. Gevo, Inc.*,
No. 2013–1342, 2014 U.S. App. LEXIS 2877, 29
(Fed. Cir. Feb. 18, 2014)................................................................... 18, 27

*Conoco Inc. v. Energy & Envtl. Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) ........................................................ 18, 27

*Contessa Food Prods. v. Conagra*,
282 F.3d 1370 (Fed. Cir. 2002) ............................................................ 29

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
559 F.3d 1308 (Fed. Cir. 2009) .............................................................. 18

*Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998) .............................................................. 18

*Door-Master Corp. v. Yorktowne, Inc.*,
256 F.3d 1308, 2001 WL 765876 (Fed. Cir. 2001).............................. 20

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ......................................................passim

*Elmer v. ICC Fabricating, Inc.*,
67 F.3d 1571 (Fed. Cir. 1995) ............................................ 19, 31, 32, 33

*Gorham Co. v. White*,
81 U.S. 511, 20 L. Ed. 731 (1871)......................................................... 31

*Hartco Engg, Inc. v. Wang's Int'l, Inc.*,
142 Fed. Appx. 455 (Fed. Cir. 2005) .............................................. 20, 32

*Hupp v. Siroflex of Am.*,
122 F.3d 1456 (Fed. Cir. 1997) ............................................................. 21

*In re Mann,*
   861 F.2d 1581 (Fed. Cir. 1988) ...................................................... 32, 33

*Inwood Labs. v. Ives Labs.,*
   456 U.S. 844, 102 S. Ct. 2182 (1982) .................................................... 22

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,*
   997 F.2d 1444 (Fed. Cir. 1993) ............................................................ 20

*L.A. Gear v. Thom McAn Shoe Co.,*
   988 F.2d 1117 (Fed. Cir. 1993) ............................................................ 21

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.,*
   628 F.3d 1359 (Fed. Cir. 2010) ...................................................... 19, 27

*Lee v. Dayton-Hudson Corp.,*
   838 F.2d 1186 (Fed. Cir. 1988) ................................................. 32, 40, 41

*OddzOn Prods. v. Just Toys,*
   122 F.3d 1396 (Fed. Cir. 1997) ......................................... 20, 22, 23, 30

*PHG Techs., LLC v. St. John Cos.,*
   469 F.3d 1361 (Fed. Cir. 2006) ...................................................... 21, 40

*Read Corp. v. Portec, Inc.,*
   970 F.2d 816 (Fed. Cir. 1992) ............................................................. 20

*Richardson v. Stanley Works*, Inc.,
   597 F.3d 1288 (Fed. Cir. 2010) ..................................................... passim

*Rosco, Inc. v. Mirror Lite Co.,*
   304 F.3d 1373 (Fed. Cir. 2002) ........................................................... 21

*Sun Hill Indus. v. Easter Unlimited,*
   48 F.3d 1193 (Fed. Cir. 1995) ............................................................. 40

*Traffix Devices v. Mktg. Displays,*
   532 U.S. 23, 121 S. Ct. 1255 (U.S. 2001) ............................................. 27

*Z Produx, Inc. v. Ofra Cosmetics, LLC, et al.;*
   Case No. CV 12–05040 DDP (RZx) (C.D. Cal.)................................viii

vi

**Statutes**

35 U.S.C. § 101 .......................................................................... 27

**Other Authorities**

Donald S. Chism, 8 CHISM ON PATENTS
    § 23.05[3][e] at 23–267 (2011).............................................. 23

**Rules**

Federal Rule of Civil Procedure 56(a) .................................... 18

## Statement of Related Cases

No other appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court.

The other case[s], in this or any other court, that counsel knows to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal are as follows:

*Z Produx, Inc. v. Ofra Cosmetics, LLC, et al.*; Case No. CV 12–05040 DDP (RZx) (C.D. Cal.).

## Statement of Facts

### I.    U.S. Patent No. D642,743

U.S. Patent No. D642,743, "Cosmetic Holder" (the "´743 Design Patent") was filed on April 14, 2010 by inventor Zena Shteysel ("Ms. Shteysel"). (A20.)The patent was filed on April 14, 2010 and issued August 2, 2011. (*Id.*) The USPTO system indicates it was assigned to Z Produx, Inc. ("Z Produx") on May 18, 2012. (A121.) It includes one claim for "[t]he ornamental design for the cosmetic holder, as shown and described." (A20.) The ´743 Design Patent includes a number of figures, for example:



FIG.1

1



(A21–25 at Figs. 1–2; highlighted excerpts of Figs. 1, 4, 7, 8, 11.)

The drawings are all consistent. They depict lips along the front side of the design that extend past the edge of the case to give the design a "book-like" appearance; they reveal two seams or ridges along the side of the cosmetic case, rather than just one, where the case would separate; and a thick window frame. (*See id.*) Indeed, the

drawings of the ´743 Design Patent indicate that the window frame makes up 33% of the entire lid.[1]

### A.    The Z Palette is the product that embodies the ´743 Design Patent.

Ms. Shteysel is the president of Z Produx. Z Produx is in the business of selling the Z Palette, which embodies the ´743 Design Patent. (A126, A132, A677 (depicting D,642743 patent marking on back of the Z Palette).) The Z Palette appears as follows:



(A142.) The opaque rim of the box is relatively thick in appearance, and has proportionally a thick border as compared to the size of the

_____

[1] The window pane of the '743 Design Patent as depicted in Figure 2 of the '743 Design Patent measures 2 inches by 3.875 inches, having a surface area of 7.75 inches. The measurement of the entire palette is 2.625 inches by 4.375 inches, having a surface area of 11.484 inches. The percentage of the surface area of the window is therefore approximately 67% of the total lid. (A891, ¶3.)

window. In fact the thick border constitutes 39% of the surface area of the Z Palette.[2] The material of the cosmetic holder is a matte finish with a cardboard-like texture. (*See id.*) Like the ´743 Design Patent, the Z Palette has two scores or ridges along the edges of the cosmetic holder:



(A144.)

Additionally, as depicted in the ´743 Design Patent, the Z Palette has a flat, unarticulated "hinge-less" spine:

---

[2] The Z Palette is 4.75 inches wide and 8 inches long; the window pane in the lid measures 3.5 inches wide by 6 5/8 inches long.  This means that the surface area of the lid is 38 square inches (4.75x8) and the surface are of the window pane is 23.18 square inches (3.5x6.625). Proportionally, the window pane makes up 61% of the square inches of the lid, whereas the opaque rim makes up the remaining 39% of the square inches of the lid. (A110, ¶¶4-5.)



(*Id.*, A146.) These features together could be said to give the cosmetic holder a "book-like" design and appearance.

### B.    The USPTO rejected Ms. Shteysel's related utility patent.

In addition to filing for a design patent, Ms. Shteysel also applied for a utility patent covering the utilitarian aspects of her product. (A287, A392.) The utility patent application, filed April 14, 2010, sought to claim, among other things, a cosmetic holder with a magnetic bottom, a spine, a recess for receiving metal makeup containers, and a top frame "defin[ing] a window for viewing the makeup containers that are supported on the magnetic base, when the cover assembly is closed." (A295, A332.) But the utility patent application was rejected as obvious, in part based on the "Liden" patent[3] depicted below and assigned to Make-Up Art Cosmetics, Inc. ("MAC").

---

[3] The "Liden" patent is US Design Patent D597,256, filed on June 10, 2008.  (A575-84.)  Except for a pre-installed insert to hold



(A582, Fig. 13.) As the examiner noted, "Liden teaches the top cover portion of a cosmetic holder may contain a frame with an opening in which a clear material may be inserted such that the opening covered in clear material acts as a window for viewing the makeup containers when the cover is in a closed position." (A332, Rejection dated 9/14/11.) Indeed, Ms. Shteysel has acknowledged that she was not the first inventor to come up with a cosmetic holder with either a clear top or, of course, that was sold empty (i.e., had an empty base). (A133 (testifying that Ms. Shteysel, the inventor, was not the first inventor to come up with a clear top window or empty base).)

_____

cosmetics in place, the design depicted in Liden is essentially identical to the accused product.

## II.   MAC Pro Palette Large Single

The only MAC product accused of infringement is the MAC Palette. (A38, ¶ 11.) The MAC Palette has a distinct appearance from either the ´743 Design Patent claimed design or the Z Palette that embodies it. First, it has a narrower opaque rim than the proportions identified in either the ´743 Design Patent or the Z Palette:



(A679.) The opaque rim of the box is relatively thin and sleek in appearance, and has proportionally a narrow border as compared to the size of the window. (*See id.*) In fact the narrow border constitutes only 16% of the surface area of the MAC Palette.[4] Additionally,

---

[4] The MAC Palette is 4 3/8 inches wide and 7 inches long; the window pane in the lid measures 3 7/8 inches wide by 6 5/8 inches long.  This means that the surface area of the lid is 30.6 square inches (4.475x7) and the surface are of the window pane is 25.67 square inches (3.875x6.625). Proportionally, the window pane makes up 83.8% of the square inches of the lid, whereas the opaque rim makes up the remaining 16.2% of the square inches of the lid. (A110-11, ¶5.)

rather than having a flat back hinge that folds back on itself like the Z Palette, the MAC Palette has a triangular or ridged hinge:



(A521.) Also, the edges are "flush" with one another without the "scoring" around the rim of the product present in the Z Palette or ´743 Design Patent:



(A523.) Thus, as described further below, the MAC Palette has a distinct appearance from the Z Produx patent or Z Palette product.

## III.    Procedural Background

On September 23, 2013, MAC filed a motion for Summary Judgment, claiming that Z Produx had disclosed its design more than one year before seeking patent coverage and that the design was therefore invalid. Even if the design was not invalid because of prior public use and disclosure, MAC asserted that it did not infringe the design patent because, among other things, the only characteristics shared between the accused product and the ´743 Design Patent was (1) a clear window in the lid of the palette, and (2) the fact that it was sold empty. MAC argued that these characteristics are functional and therefore cannot provide a basis for infringement.

Z Produx claimed that because the prior disclosure of its Z Palette was only of the top of the product, the disclosure was not enabling of the entire design and therefore should not invalidate its patent. Further, it claimed that the clear window and empty base of its design were not functional. Z Produx claimed that the clear window and empty base could not be factored out of the design because the sole test of infringement was the "ordinary observer" test which must be decided by a jury.

On October 21, 2013, the district court held a hearing to consider the parties' arguments. MAC's counsel presented its argument, including that the ´743 Design Patent was not infringed because the MAC Palette had a different hinge than in the ´743

Design Patent, a different shape to its window, and did not have the "book like" extended edges that were disclosed in the ´743 Design Patent. (A975–78.) In response, Z Produx's counsel argued that the ordinary observer test of Egyptian Goddess, rather than the "point of novelty" test, should govern, and that any consideration of its design elements was the equivalent of applying the "point of novelty" test. (A978.) But Z Produx's counsel acknowledged that it is the protectable elements which inform the ordinary observer test:

> COURT: But defense counsel isn't saying that [the point of novelty test is] the correct test. You still look at it holistically, but you look at the various ornamental features that are protectable within that context; right? You don't go — you don't — you don't take off a list this — it has this; it has this; it has this. That isn't the test. You still look at it. You look at it. You give it the eyeball test, but you inform the eyeball test by looking at the protectable elements.

> MR. KATZ: Correct. It's the overall visual impression. And when it comes to the protectable elements, let me just point out to — to appreciate —

> THE COURT: Did I articulate the test correctly? Yes?

> MR. KATZ: I believe so, Your Honor.

(A979.) Nevertheless, Z Produx's counsel went on to argue that any construction of the patented claim should merely refer to what was

depicted in Figure 1 of the ´743 Design Patent, and that the clear window should not be factored out of any analysis. (A879–80; A985.)

### A.  The District Court properly construed the ´743 Design Patent.

On November 5, 2013 the District Court for the Central District of California rejected MAC's contention that the ´743 Design Patent was invalid based upon prior disclosure, but granted Summary Judgment in favor of MAC on the issue of non-infringement and entered Judgment accordingly. (A1–A19.) In making its ruling, the district court considered whether the existence of a clear top and empty base must be considered functional aspects of the ´743 Design Patent. The district court concluded that these aspects of the ´743 Design Patent were functional for four reasons.

First, the district court applied Federal Circuit precedent and concluded that contrary to Z Produx's argument, the functionality of the specific elements — a clear top and empty base — rather than the functionality of the entire article — a cosmetic holder — must be considered. (A11 ("Just as a tail and fins are not necessary to design a 'tossing ball,' a clear cover and empty base are not necessary to design a cosmetics palette. Yet in both cases the additional elements bring added functionality to the product, rendering them functional, rather than ornamental, features.").)

Second, the district court examined the evidence and found that the inventor and Z Produx President, Ms. Shteysel, had testified that the clear window and empty base offered functional benefits. (A12 (Shteysel pointed to the functionality of the clear cover and empty base, stating: "[Customers] like the window and that you can see through it. They like that you can customize it any way you want so you can fit any size product, any brand, all in one palette, interchangeable.").)

Third, the district court concluded that because there was no other apparent way for the function of the design elements at issue to be met, the "clear cover and empty base appear to be essential for the functionality that these elements offer." (*Id.* ("As MAC points out, there appears to be no other way to enable a user to view the contents of her palette without opening it but to make the cover see-through or to enable the customization of the palette's contents without leaving the compartment empty.").)

Fourth, the district court noted that the functional nature of the design elements at issue was supported by inventor's efforts to secure a utility patent covering these elements:

> [A]t the time that Shteysel applied for what became the ´743 design patent, she filed an unsuccessful application for a utility patent. The application claimed a cosmetic holder with, among other elements, a "frame in order to define a window for viewing the makeup containers." The patent office

rejected the window claim as obvious in view of the Liden [design] patent (Patent No. D597256), which claimed a top frame with "a window for viewing the makeup containers when the cover is in a closed position." As noted, the Liden [design] patent, which looks very similar to the ´743 design patent, has been assigned to MAC.

The patent office likewise rejected the other four claims in Shteysel's utility patent application, which described a cosmetic holder with a magnetic base with a recess for receiving metal makeup containers, in light of the Jimbo patent (Patent No. 5005697). The existence of these prior utility patents covering the elements at issue further indicate that the clear top and empty base elements are functional.

(A13.)

Based upon these considerations, the district court "factored out" the mere existence of a clear top and empty base as "functional elements" of the ´743 Design Patent. The district court also rejected Z Produx's argument that it must not use words in construing the patent and came to the following construction:

The ´743 claims the ornamental features of a cosmetic holder design that includes a "lip" extending past the edge of the cosmetic holder, with a flat or flushed spine or hinge along the back of the case, and with the overall proportions depicted in its drawings.

(A14.)

## B.    The District Court properly concluded that the MAC Palette did not infringe the ´743 Design Patent.

Having reached a claim construction, the district court turned to its examination of Z Produx's infringement claims by comparing the claims as construed to the alleged infringing MAC Palette. First, the district court noted that Z Produx itself had pointed only to the mere existence of a clear window and an empty base as infringing design elements. (A16.) However, the elements of having a clear window and empty base are not protectable ornamental design features. (*Id.*) The district court concluded that once those features are factored out, the accused MAC Palette and the ´743 Design Patent "bear little resemblance." (*Id.*)

The court recognized that the MAC Palette has an overall slimmer look as a result of the designs' differing proportions. (A16–17 ( holding that "Z Produx does not contest that the window pane in the ´743 Design Patent makes up 67% of the square inches of the lid, with the opaque rim making up the remaining 33%" and "the window pane of the Z Palette makes up 61% of the square inches of the lid, with 39% made up by the opaque rim" but that MAC Palette window makes up a "substantially greater 84% of the lid, as compared to 16.2% made up by the rim").)  These differences "make the products clearly distinguishable upon first glance." (*Id.*)

In addition, the court noted that the MAC Palette does not have several of the features exhibited in the ´743 Design Patent. The ´743 Design Patent and the Z Palette both have "a lip that extends beyond the edge of the cosmetic holder, giving the design a book-like appearance" but in contrast, "the MAC Palette has edges that are flush." (A17.) The ´743 Design Patent also "claims a design with two seams or ridges along each side, in addition to the one where the case separates, contributing further to the design's book-like appearance" but the "MAC Palette, contrastingly, has no additional seams." (*Id.*) Moreover, the ´743 Design Patent "has a hinge that is flush with the cosmetic case, resembling the binder of a book" but the MAC Palette has a distinctive triangular raised hinge. (*Id.*)

Based on these undisputed facts, the district court held that the MAC Palette did not infringe the ´743 Design Patent. In reaching this conclusion, the district court clarified that it did "not consider such design elements under the 'point of novelty' test, but instead refers to these elements solely in the course of explaining that — once unclaimable features are factored out — an ordinary observer could not confuse the two products." (*Id.*)

The district court entered final judgment as to non-infringement. This appeal follows.

## Summary of the Argument

Z Produx's arguments that summary judgment in favor of MAC as to Count I, Design Patent Infringement of U.S. Pat. No. D642,743 (the "´743 Design Patent"), should be reversed are without merit. First, the district court properly construed the ´743 Design Patent. It excluded the mere existence of the clear top and empty base as unprotectable functional design elements. As the district court observed and Z Produx does not challenge on appeal, these design features provide additional functionality to a cosmetic holder. There is no other way to allow a user to see through the top other than to make it clear, and there is no other way to allow a user to customize the contents of the holder other than to sell it empty. Thus, these two elements are dictated by their functionality.

Second, the district court did not err in using limited phraseology to construe the scope of the ´743 Design Patent. Federal Circuit precedent conclusively establishes that the use of words to describe a design is not improper. In addition, such a description does not necessarily implicate the "point of novelty" test as Z Produx contends. Indeed, here, the district court expressly noted that it was applying the "ordinary observer" test.

Finally, the district court's evaluation of infringement was balanced and well-supported. Z Produx has never claimed — and does not claim on appeal — that each of the ornamental elements of

the ´743 Design Patent are present in the design of the MAC Palette. Z Produx appears to insist that it has sustained its burden to show infringement by merely averring that both the ´743 Design Patent and the MAC Palette have an empty base and clear top (the existence of which is functional), and that the products somehow share the same "overall visual impression." Such a showing is inadequate to sustain any burden and the district court properly found non-infringement.

The record amply demonstrates that the district court's decision should be affirmed.

# Argument

## I.    Standard of Review

Z Produx challenges the district court's grant of summary judgment as to claim construction and non-infringement. Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Infringement is a question of fact. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). Therefore, the standard of review is whether the district court correctly concluded that no reasonable jury could find infringement. *Id.*

The Federal Circuit also reviews claim construction as a matter of law, which is reviewed without deference. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Although claim construction review is de novo, a party may not raise new claim construction arguments for the first time on appeal. *See Butamax(TM) Advanced Biofuels LLC v. Gevo, Inc.*, No. 2013–1342, 2014 U.S. App. LEXIS 2877, 29 (Fed. Cir. Feb. 18, 2014) ("This court declines to consider what appears to be a new claim construction argument raised for the first time on appeal."); *Conoco Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358–59 (Fed. Cir. 2006) ("[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below.");

18

*accord Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010).

## II.   The District Court Properly Construed the ´743 Design Patent

"[F]irst, as with utility patents, . . . the claim [must] be properly construed to determine its meaning and scope. Second, the claim as properly construed must be compared to the accused design to determine whether there has been infringement." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citations omitted).

The district court construed the claims of the ´743 Design Patent as follows:

> The ´743 claims the ornamental features of a cosmetic holder design that includes a "lip" extending past the edge of the cosmetic holder, with a flat or flushed spine or hinge along the back of the case, and with the overall proportions depicted in its drawings.

(A14.) In formulating this construction, the district court rejected Z Produx's contentions that (1) any construction must include functional elements, including the clear top and empty base depicted in the drawings; and (2) the district court should not use words to describe the features of the ´743 Design Patent in connection with its claim-construction efforts. (A11–12.)

19

### A.    The District Court did not err in excluding functional elements from the claim construction.

A design patent protects only "the novel, ornamental features of the patented design," not the functional elements. *OddzOn Products, Inc.* , 122 F.3d 1396, 1405 (Fed. Cir. 1997) (citation omitted). "Where a design contains both functional and nonfunctional elements, the scope of the claim must be construed in order to identify the nonfunctional aspects of the design as shown in the patent." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (en banc) (quotation omitted); *accord Read Corp. v. Portec, Inc.*, 970 F.2d 816, 820 (Fed. Cir. 1992); *Hartco Engg, Inc. v. Wang's Int'l, Inc.*, 142 Fed. Appx. 455, 458 (Fed. Cir. 2005); *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993). As the Richardson Court explained:

> If the patented design is primarily functional rather than ornamental, the patent is invalid. However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article.

*Richardson*, 597 F.3d at 1293–94; *see also Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 2001 WL 765876 (Fed. Cir. 2001).

## 1. The District Court did not err by considering the functionality of individual elements.

Z Produx contends that the district court erred by considering the functionality of individual design features rather than the functionality of the device as a whole. (App. Br.[5] at 11.) But in making its argument, Z Produx conflates the consideration of whether the design as a whole is invalid with claim construction addressing functional, rather than ornamental, elements of the design.

In fact, every case relied upon by Z Produx considers whether the patent is invalid for being "purely functional" rather than whether functional elements that cannot be protected by a design patent should be excluded during claim construction. (*See* App. Br. at 12–13 (citing *L.A. Gear v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (considering whether design is invalid as primarily functional); *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1368 (Fed. Cir. 2006) (same); *Berry Sterling Corp. v. Prescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997) (same); *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002) (same); *Hupp v. Siroflex of Am.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997) (same). The district court did not find the ´743 Design Patent to be wholly invalid as purely functional. As a result, these cases do not apply.

---

[5] Appellant's Brief will be referred to as "App. Br." for ease of reference.

The district court appropriately consulted Federal Circuit precedent, including *OddzOn Prods. v. Just Toys*, 122 F.3d 1396 (Fed. Cir. 1997), and determined that the clear top and empty base are functional elements that cannot be deemed protectable aspects of the patented design. (A10.)  "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *Richardson*, 597 F.3d at 1298 (quoting *OddzOn Prods.*, 122 F.3d at 1405).

In discriminating between "functional" design aspects that can be copied and "ornamental" aspects that can be patented and protected, courts evaluate the usefulness of the asserted design. An aspect is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 851 n.10, 102 S. Ct. 2182 (1982).

For example, in *OddzOn Prods.*, 122 F.3d at 1405, the Federal Circuit evaluated a design patent covering a foam football with a tail and fin structure:



(A573.) The accused products by New Toys were also foam footballs with fins:



Just Toys "Ultra Pass" balls

(A569.) Donald S. Chism, 8 CHISM ON PATENTS § 23.05[3][e] at 23–267 (2011). The *Oddzon* court determined that the design patent covered both functional and nonfunctional elements. *OddzOn Prods.*, 122 F.3d at 1405. Though the patent holder could claim protection over its specific design, it could not claim a monopoly over "rocket-like" tossing balls with a tail:

> While [the patentee] correctly states that there are many ways of designing "tossing balls" it is undisputed that the ball in question is specifically designed to be thrown like a football, yet travel further than a traditional foam football. It is the football shape combined with the fins on a tail that give the design these functional qualities. The tail and fins on [the patented] design add stability in the same manner as to the tail and fins founds on darts or rockets. They are no less functional simply because "tossing balls" can be designed without them. . . . These . . . functional characteristics . . . limit the scope of the protected subject matter.

*Id.*, at 1406 (quoted by the district court at A11).

Accordingly, the relevant inquiry is not, as Z Produx suggests, whether there are alternative designs for performing the function of a "cosmetic holder" generally. *See id.* Rather, what must be considered is whether there are alternative designs that allow the user to see through the lid of the cosmetic holder without opening it, and allow the user to customize the make-up inside the cosmetic holder by filling it with make-up of the user's choosing. The alternative designs proffered by Z Produx (App. Br. at 12) are therefore inapposite, and there is no evidence of an alternative design to perform the functions of the see-through lid and the empty base. (*See* A12; A879.)

### 2.    The District Court did not improperly "weigh" Ms. Shteysel's affidavit.

Z Produx contends that the district court erred in determining that there was no fact question as to whether a windowed lid and empty base tray were functional in light of Ms. Shteysel's affidavit. (App. Br. at 19–20.) The district court concluded that Ms. Shteysel's conclusory, unsupported and self-serving affidavit filed in response to MAC's motion for summary judgment was not persuasive:

> The Court gives little weight to subsequent assertions, made by Ms. Shteysel in a declaration without assertions of factual support, that the clear cover and empty compartment serve aesthetic functions of making the palette look "more visually appealing" and "uncluttered." "A

> conclusory, self-serving affidavit, lacking
> detailed facts and any supporting evidence,
> is insufficient to create a genuine issue of
> material fact." *Fed. Trade Comm'n v. Publ'g
> Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th
> Cir. 1997) (citing *Fed. Trade Comm'n v. Publ'g
> Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th
> Cir. 1997)).

(A12, n.2.)

The district court's determination is well-supported by the record. Indeed, Z Produx fails to cite any authority for the proposition that an inventor's self-serving assertion that a design is "appealing" and "uncluttered" is sufficient to create a factual issue.

Moreover, Ms. Shteysel 's affidavit was inconsistent with her own deposition testimony on the subject. For example, she testified that the purpose of the clear window "is so you can see the product immediately inside" and the purpose of the empty case is "so that you can put whatever you want into it." (A126; *see also id*. at A127 (stating that the design was developed by asking a manufacturer to use their own design but to "create something that came with an empty pan and a clear window" that was not as "long and rectangular"); at 138 (testifying that a cosmetic holder product that does not come empty can't be customized or allow the customer to mix and match their make-up and that if the product does not have a clear window the customer cannot see the product inside without opening the lid); at 140 (same).)

Ms. Shteysel also testified that the Z Palette consumer base appreciates these design aspects because of their usefulness, not the ornamental appearance:

> [Customers of the Z Palette] like the window and that you can see through it. They like that you can customize it anyway you want so you can fit any size product, any brand, all in one palette, interchangeable. They like that it features a magnet inside. And that I offer different sizes, I think, and different designs.

(A135.) Customers appreciate that a clear lid allows them to easily find and view their make-up choices. (A137-39.)

In addition, Ms. Shteysel's affidavit was inconsistent with her own utility patent application. At the time that Ms. Shteysel applied for what became the '743 Design Patent, she also filed an unsuccessful application for a utility patent. (A287 & A392.)That application sought to claim a cosmetic holder with, among other elements, a "frame in order to define a window for viewing the makeup containers." (A295, A332.) The proposed claims were rejected as obvious over the prior art, including the Liden patent (Patent No. D597256), which revealed "a window for viewing the makeup containers when the cover is in a closed position." (A332.) Nevertheless, Ms. Shteysel's attempt to secure protection in the form of a utility patent for the clear top and empty base features was wholly inconsistent with her affidavit testimony that such features

were purely aesthetic. *See Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 29, 121 S. Ct. 1255, 1260 (U.S. 2001) ("[a] utility patent is strong evidence that the features therein claimed are functional."); 35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.").

The district court did not err in concluding that Ms. Shteysel's affidavit was conclusory, contradicted by her deposition testimony, inconsistent with all of the evidence, and otherwise entitled to little weight.

### 3.   Z Produx's proposed claim construction assertion that the window can be a different shape was not raised below, and is unpersuasive.

Z Produx claims that the window cannot be a functional element because the size, shape, and design of the window itself can vary. (App. Br. at 10.) Similarly, Z Produx claims that there is no evidence that the window pictured in the patent was "in a necessary or optimal shape." (App. Br. at 11.) But these arguments were not raised below. As a result, they cannot be raised for the first time on appeal. *See Butamax(TM) Advanced Biofuels LLC,* No. 2013–1342, 2014 U.S. App. LEXIS 2877 at *29; *Conoco Inc.*, 460 F.3d at 1358–59; *accord Lazare Kaplan Int'l, Inc.*, 628 F.3d at 1376.

Regardless, such arguments misinterpret the district court's decision. The district court did not conclude that a window of any shape or size could never be entitled to protection. Rather, the district court concluded that the mere existence of a window, serving the function of allowing a party to see what is inside, must be "factored out." The shape and proportions of the window frame, however, remained a part of the district court's claim construction and infringement analysis. (*See* A16–17 (comparing the proportions of the accused infringing MAC Palette to those of the ´743 Design Patent).) Indeed, the district court's claim construction construed the ´743 Design Patent as having "the overall proportions depicted in its drawings." (A14.) Those proportions are simply not similar to those of the MAC Palette.

## B.    The District Court did not err in using limited phraseology to describe the claim of the ´743 Design Patent.

Z Produx argues that the district court erred in offering a "detailed verbal description" of its claim and that this constitutes an application of the rejected "point of novelty" test. (App. Br. at 6, 16–17, 25–27.) According to Z Produx, the proper construction is one that "simply referenced the illustration of the patent." (*Id.* at 10.) But such an argument was squarely considered, and rejected outright, by the Federal Circuit in *Richardson v. Stanley Works*, Inc., 597 F.3d 1288, 1294 (Fed. Cir. 2010).

In *Richardson*, the Court addressed a plaintiff's argument that "claim construction should comprise nothing more than the drawings" because "it is the ordinary observer's perception of those drawings that is the controlling consideration." *See id.* The Court rejected this argument, stating that though the district court had verbally addressed particular design elements, there was no evidence that the drawings had been excluded from the claim construction analysis. *Id.* The Court concluded:

> Richardson fails to explain how a court could effectively construe design claims, where necessary, in a way other than by describing the features shown in the drawings. Richardson's proposition that the claim construction should comprise nothing more than the drawings is simply another way of arguing that the court erred by identifying the functional elements of the patented article, and is therefore unavailing.

*Id.* Thus, it is necessary and proper to use words to articulate the ornamental, as distinct from functional, elements of a patented design. Indeed, Z Produx's argument that the Court should not identify and articulate the ornamental elements of a design contradicts *Richardson*, and the body of case law decided both before and since *Egyptian Goddess*.

Z Produx relies upon *Contessa Food Prods. v. Conagra*, 282 F.3d 1370, 1377 (Fed. Cir. 2002), for the proposition that the Federal Circuit has affirmed a claim construction stating "a tray of a certain

design . . . as shown in Figures 1–3." (App. Br. at 7.) But in fact, the *Contessa* Court affirmed a construction that "considered and described each of the Figures in the ´612 patent, and based its claim construction on the ornamental features illustrated by all of the Figures, including the arrangement of the shrimp depicted in Figures 1–3 and the shape and appearance of the tray depicted in Figures 4 and 5." *Id.* The Federal Circuit found that in providing this written description of the claims, "the district court properly construed the scope of the claimed invention to be its overall ornamental visual impression, rather than the broader general design concept." *Id.* (quoting *OddzOn Prods.*, 122 F.3d at 1405).

The district court determined that the ´743 Design Patent claims the ornamental features of a cosmetic holder design that includes a "lip" extending past the edge of the cosmetic holder, with a flat or flushed spine or hinge along the back of the case, and with the overall proportions depicted in its drawings. (A14.) Neither *Contessa* nor any other case relied upon by Z Produx articulates a position that the Court and litigants must entirely refrain from using words to describe the design — in fact, *Richardson* expressly rejected such a contention. Z Produx has never proposed any construction for its drawings that interprets the limitations of the ´743 Design Patent and demonstrates how those limitations are found in the MAC Palette. Therefore, the district court should be affirmed.

### C.    The District Court did not err in adopting a proposed claim construction from MAC's briefing.

Z Produx contends that the "district court improperly selected a claim construction on behalf of MAC" because it construed the claims in accordance with MAC's reply briefing. (App. Br. at 18.) However, Z Produx did not cite any law in support of this contention, and MAC was unable to find any. Instead, courts are free to adopt a claim construction proffered by the parties, or their own. Therefore this contention does not justify a reversal of the district court.

### III.    The District Court's Infringement Analysis Was Proper

"Once a claim is properly construed it must then be compared to the accused design to determine whether there has been infringement." *Elmer*, 67 F.3d at 1577. Under the "ordinary observer" test for infringement, infringement will not be found unless the accused article embodies the patented design or a colorable imitation of it. *Egyptian Goddess, Inc.*, 543 F.3d at 678. "In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear substantially the same to the ordinary observer, as required by Gorham." *Id.* (citing *Gorham Co. v. White*, 81 U.S. 511, 20 L. Ed. 731 (1871)).

### A.    The District Court properly analyzed non-infringement in view of the ´743 Design Patent as depicted in its drawings.

The district court properly limited the ´743 Design Patent to the design actually depicted in the drawings, and then compared it to the alleged infringing MAC Palette. The thrust of Z Produx's contention is that the construction imparted to the ´743 Design Patent should be entirely unstated, that infringement should require no more than a vague resemblance to what the ´743 Design Patent actually depicts, and that once limitations of the design are ignored, the MAC Palette should be found to infringe.

However, this position is contrary to law. A patented design does not cover the universe of designs that remotely resemble it. *See Elmer*, 67 F.3d at 1577 (patentee included in its drawings certain features that gave the design "a distinctive ornamental appearance," and "thus effectively limited the scope of its patent claim by including those features in it"). Design patent protection is very narrow, covering only what is specifically shown in the drawings of the patent. *Hartco Engg, Inc. v. Wang's Int'l, Inc.*, 142 Fed. Appx. 455, 458 (Fed. Cir. 2005); *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."); *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188-90 (Fed. Cir. 1988) ("[I]t is the non-functional, design aspects . . . that are pertinent to determinations of infringement. . . . A device that copies

the utilitarian or functional features of a patented design is not an infringement. . . [While] infringement can be found for designs that are not identical to the patented design, such designs must be equivalent in their ornamental, not functional, aspects.").

For example, in *Elmer*, the Federal Circuit construed the claims of the "ornamental design for a vehicle top sign holder, as shown and described." *Elmer*, 67 F.3d at 1577. The only design "shown and described" was a vehicle sign design that included, inter alia, triangular vertical ribs and an upper protrusion that gave the design a distinctive ornamental appearance. *Id.* No other design was suggested by the patent. *Id.* Because the triangular vertical ribs were included in the patent drawings, the patentee "effectively limited the scope of its patent claim by including those features in it." *Id.* (citing *In re Mann*, 861 F.2d at 1582).

Here, the district court properly limited the ´743 Design Patent to the design actually depicted in the drawings, and then compared it to the alleged infringing MAC Palette. The MAC Palette has an overall slimmer look owing to the designs' differing proportions which "make the products clearly distinguishable upon first glance." (A16–17.) Indeed, the district court examined the differing proportions of the design with precision:

> Z Produx does not contest that the window pane in the ´743 design makes up 67% of the square inches of the lid, with the opaque rim making up the remaining 33% . . . the

> window pane of the Z Palette makes up 61%
> of the square inches of the lid, with 39%
> made up by the opaque rim. . . [and the]
> MAC Palette makes up a substantially
> greater 84% of the lid, as compared to 16.2%
> made up by the rim.

(*Id.*) These conclusions are supported by uncontroverted facts:

| Proportions |
| --- |



(A43 at Fig. 2; A142, A679.)

Having found that the proportions of the window pane and the opaque rim differed between the MAC Palette and the ´743 Design Patent, the district court also found that the MAC Palette did not have several of the features exhibited in the ´743 Design Patent at all. The ´743 Design Patent and the Z Palette that embodies it both have "a lip that extends beyond the edge of the cosmetic holder, giving the design a book-like appearance" but in contrast, "the

MAC Palette has edges that are flush." (A17.) Additionally, the ´743 Design Patent "claims a design with two seams or ridges along each side, in addition to the one where the case separates, contributing further to the design's book-like appearance" but the "MAC Pallete, contrastingly, has no additional seams." (*Id.*) These findings are supported by uncontroverted evidence:



(A43–48, at Figs. 8; 4; A533 & A531 (highlight added); A134; A136.)

Finally, the ´743 Design Patent also "has a hinge that is flush with the cosmetic case, resembling the binder of a book" but the MAC Palette has a distinctive triangular raised hinge. (A17.) Once more, this observation is incontestable:



| Hinge |
| --- |

(A44 at Figs. 5 (depicting rear elevational view) and 4 (depicting side elevational view from either side); A535 and A521 (highlighting added); A135 (agreeing that the MAC Palette has a different hinge).)

Because the district court identified several ornamental features of the ′743 Design Patent that are not shared by the MAC Palette, its decision should be affirmed.

### B.    The District Court applied the "ordinary observer" test and not the "points of novelty" test.

Z Produx repeatedly claims that the district court applied the "point of novelty" test rather than the "ordinary observer" test because it utilized words in its claim construction and because it "confined its analysis to discrete design elements" and "attempted to place itself in a position of the ordinary observer" but "did not appear to familiarize itself with the relevant prior art." (App. Br. at 25.)

Z Produx's characterization of this aspect of the district court's decision is incorrect. The district court applied the test as follows:

> To determine if an infringement has occurred, the court applies the "ordinary observer test," whereby the court must determine whether an ordinary observer, familiar with the prior art and designs, would be deceived into believing that the accused product is the same as the patented design. The focus of the analysis is the overall impression of the claimed ornamental features rather than small differences in isolation.

(A15 (quotations omitted).) The district court expressly stated that it did "not consider [the ´743 Design Patent] design elements under the 'point of novelty' test, but instead refers to these elements solely in the course of explaining that — once unclaimable features are factored out — an ordinary observer could not confuse the two products." (A18.) It also observed that the MAC Palette and the ´743 Design Patent were "clearly distinguishable upon first glance." (A16–17.) Finally, the district court asked Z Produx if it had articulated the proper test for infringement at the hearing, and Z Produx agreed that it had. (A979.)

Instead of the misapplication of any test, the MAC Palette was found not to infringe the ´743 Design Patent based upon several distinctions in its ornamental character. Because of these distinctions, "the claimed design and the accused design will be

sufficiently distinct" and it is "clear without more that the patentee has not met its burden of proving the two designs would appear substantially the same to the ordinary observer." *See Egyptian Goddess*, 543 F.3d at 678 (articulating this as an applicable standard under the ordinary observer test).

### C.  The District Court did not err in considering Z Produx's infringement contentions in connection with summary judgment.

Z Produx claims that the district court "erroneously arrived at the misplaced belief that Z Produx had pointed to only two elements of the ´743 Design Patent which it alleges are infringed" but in fact, Z Produx claims to have pointed to "the overall visual impression claim [sic] in D642,742." (App. Br. at 27.)

The district court noted that Z Produx itself had pointed only to the mere existence of a clear window and an empty base as infringing design elements. (A16.) This is in fact the case. The only two elements Z Products identified as shared between the Z Palette, which it claims to embody the ´743 Design Patent, and the MAC Palette are that (1) there is a clear window on the lid; and (2) it is sold empty. (A544–54 at Resp. Nos. 3, 4, 10; A126 (describing the Z Palette as a cosmetic holder with an "empty base and a clear window"); A129 (testifying that the MAC product is "exactly like" the Z Palette design because "it is being sold without the [cosmetic] inserts, creating an empty base."); at A129 (testifying that if a

cosmetic holder was sold with a cosmetic "insert [that] was inside and not removable, it would not be infringing"); at A135 (testifying that the MAC Palette looked like her own because it had a clear window and an empty base).)

Though Z Produx maintains that it "need not identify individual or particular design elements of a design of infringement under the law of *Egyptian Goddess*," this is inaccurate. *See Egyptian Goddess*, 543 F.3d at 678 ("the burden of proof as to infringement remains on the patentee"). Moreover, a review of the ´743 Design Patent as compared to the MAC Palette reveals that there are no other similarities to point to. Considering that fact, a bald and unsupported assertion that the "overall visual impression" has been infringed is insufficient to withstand summary judgment.

### D.   The District Court's reference to the proportions of the ´743 Design Patent and those of Z Produx's commercial embodiment was proper.

Z Produx contends that it is not limited to the proportions of its designs as identified in the ´743 Design Patent and that the district court erred in referring to the commercial embodiment of the ´743 Design Patent.

First, Z Produx's claim that it is not limited to the proportions identified in its design patent betrays a misapprehension of the difference between "proportions" and "size." Indeed, the proportion of the patented design is one of its ornamental aspects.

(*Lee*, 838 F.2d at 1188 ("the district court correctly viewed the design aspects of the accused devices . . . the proportions, . . . , and all other ornamental characteristics"(emphasis added).) The citations Z Produx relies upon establish only that designs of the same proportion can be manufactured in variable sizes and still embody the design. *See Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997) (reversing the district court because it "imposed the limitations of the manufacturing specifications for the 'Coke to Go' program cup on the underlying article of manufacture, thereby unduly limiting the scope of the claimed design" but the design patent had "no height or volume limitations, no requirements that the container fit in the majority of car-cup-holders and no stability limitations"); *PHG Techs., LLC v. St John Cos.*, 529 F. Supp. 2d 852, 863 (M.D. Tenn. 2007) (rejecting summary judgment motion based upon invalidly of design patent because of functionality because the design patent was not limited to a certain size); *Sun Hill Indus. v. Easter Unlimited*, 48 F.3d 1193, 1197 (Fed. Cir. 1995) ("the commercial embodiment also contains many features beyond those in the patent claim, namely color, size, and material . . . in performing a comparison with the commercial embodiment in this case, the fact finder had the obligation to carefully confine its comparison only to the claimed features, and not to unclaimed features, of the commercial embodiment").

Second, Z Produx's claim that any reference to a commercial embodiment of the design patent — which is marked with the patent number — is also incorrect. In the case of design patent cases, "where no significant distinction in design has been shown between the patent drawing and its physical embodiment, it is not error for the court to view them both, and to compare the embodiment of the patented design with the accused devices." *Lee*, 838 F.2d at 1189. Even were that not the case, the district court only relied upon the commercial embodiment of the ′743 Design Patent, the Z Palette, to the extent that it had a patent marking of the ′743 Design Patent (A4), to state that like the MAC Palette it was sold empty (A5), and to note that it comported with the characteristics of the design patent itself (A14–15). It did not "limit" the ′743 Design Patent to characteristics such as the size or color of the commercial embodiment. (*Id.*) Therefore Z Produx's argument is unavailing.

## E.    The District Court did not "ignore its own construction."

Z Produx claims that the "District Court erred by performing its infringement analysis using design aspects that were not included in the Court's claim construction, and also by failing to include in its infringement analysis design aspects that were included in its claim construction." (App. Br. at 33.)

In making its argument, Z Produx claims that because the MAC Palette has the same ratio of total width to length its proportions are

identical. (*Id.* at 34.) However, the ´743 Design Patent is not limited to a particular rectangular proportion — it covers all rectangles, and even a square. (A908–09, Resp. Nos. 3 and 4 (describing ornamental design elements of the ´743 Design Patent as "a clear window, empty base, and … rectangular and square designs"); A629 (Applicant statement that, because a rectangle is generic to a square, they constitute a single inventive concept); A634 (allowing ´743 Design Patent to cover rectangular designs including squares).) Because it claimed all rectangular and square widths and heights in the course of the patent prosecution, Z Produx is estopped from now claiming infringement on the basis of the width and height of its drawing.

Second, Z Produx claims that the court improperly examined the "seams" included in the ´743 Design Patent because the "seams" were not expressly included in the court's claim construction. (App. Br. at 34.) However the seams were included in the court's discussion of "book-like" lips along the edges of the cosmetic holder. (*See* A17; A43–48, at Figs. 8; 4; A533 & A531.)

Finally, though Z Produx claims that the window was wrongfully excluded as a functional element, it also claims that the district court improperly compared the proportions of the window claimed in the ´743 Design Patent with those of the MAC Palette. (App. Br. at 35.) But the district court found that Z Produx's construction — requiring only a clear window and an empty base —

claimed functional elements. (A17.) It did not hold that the exact proportions of the window were functional, and therefore applied them as part of the "proportions" claimed in the design. (*Id.*) This holding is consistent, proper, and should not be reversed.

## Conclusion and Statement of Relief Sought

Z Produx patented a unique design for a cosmetic case. It then inappropriately sought to expand the scope of its design patent protection to cover not only the appearance of its product, but also its functional elements, which are not subject to design patent protection. The district court properly separated form and function, and appropriately construed the patentable design elements, which it then compared to the allegedly offending product. The district court concluded, as any reasonable person or jury must, that there was no infringement of the patentable elements by MAC's product. The summary judgment granted by the district court should be affirmed in all respects.

March 19, 2014          Robins, Kaplan, Miller & Ciresi L.L.P.

By:  /s/ Thomas C. Mahlum
      Jan M. Conlin (MN No. 192697)
      Thomas C. Mahlum (MN No. 259391)
      David Martinez (CA No. 193183)
      Larina A. Alton (MN No. 0388332)

        2800 LaSalle Plaza
        800 LaSalle Avenue
        Minneapolis, MN 55402–2015

        T: 612–349–8500
        F: 612–339–4181

        *Attorneys for Appellee*
        *Make-Up Art Cosmetics, Inc.*

## Proof of Service

I hereby certify that on the 19th day of March, 2014, I electronically filed the Brief of Appellees with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. The Brief of Appellees has been scanned for viruses and is virus-free.


March 19, 2014          Robins, Kaplan, Miller & Ciresi L.L.P.


By: /s/ Thomas C. Mahlum
    Jan M. Conlin (MN No. 192697)
    Thomas C. Mahlum (MN No. 259391)
    David Martinez (CA No. 193183)
    Larina A. Alton (MN No. 0388332)


    2800 LaSalle Plaza
    800 LaSalle Avenue
    Minneapolis, MN 55402–2015

    T: 612–349–8500
    F: 612–339–4181

*Attorneys for Appellee*
*Make-Up Art Cosmetics, Inc.*

## Certificate of Compliance

The undersigned counsel for Appellee Make-Up Art Cosmetics, Inc., certifies that this brief complies with the requirements of Fed. R. App. P. 32(a)(7)(B) in that it is printed in 14–point, proportionately spaced typeface utilizing Microsoft Word 2010 and contains 8,733 words, including headings, footnotes, and quotations.

March 19, 2014          Robins, Kaplan, Miller & Ciresi L.L.P.

By: /s/ Thomas C. Mahlum
    Jan M. Conlin (MN No. 192697)
    Thomas C. Mahlum (MN No. 259391)
    David Martinez (CA No. 193183)
    Larina A. Alton (MN No. 0388332)

    2800 LaSalle Plaza
    800 LaSalle Avenue
    Minneapolis, MN 55402–2015

    T: 612–349–8500
    F: 612–339–4181

    *Attorneys for Appellee*
    *Make-Up Art Cosmetics, Inc.*